A., by authentic act, conveyed to B. certain immovable property; B. gave to A. a counter-letter, in which it was agreed that the property was transferred to B., as security for the payment of two specific debts; A. having the right to pay the debts within a fixed delay, and have the property reconveyed to him, otherwise he lost all right therein :

*Held:*—That, although this may not have been a real sale, yet it had a real cause, and cannot be invalidated as a simulated sale.

APPEAL from the Fifth District Court of New Orleans, *Eggleston,* J. *J. Ad. Rozier,* for appellants. *Kennedy & Miles,* for appellees.

HOWELL, J. This is an hypothecary action, in which plaintiffs, in February, 1858, obtained an order of seizure and sale upon a judicial mortgage against certain vacant immovable property, situated in the Parish of Jefferson, and in the possession of defendant, to satisfy a judgment recorded on 1st February, 1856, and held by them against one Warrick Martin. The defendant enjoined the sale, on the ground that, by a notarial act of sale, dated 18th, and recorded on the 19th January, 1854, he purchased for $37,360 cash, and has ever since owned and possessed, in good faith, the property seized.

In answer to the petition of injunction, plaintiffs aver that, by a counter-letter, dated 24th January, 1854, it is expressly declared that said property is transferred to the defendant Chase, as a security for the payment of a debt of $38,000, and interest, due by Martin to E. W. Clark & Bros., of St. Louis, and one of $53,000 and interest, due by said Martin to E. W. Clark, Dodge & Co., of New York, and not in payment of said debts; that no possession passed to defendant, but all the burdens and advantages of ownership remained in Martin ; that, on 5th May, 1856, Martin executed another notarial act of sale, of same property, to Chase, the alleged consideration being the failure of Martin to pay the said debts; that, at the date of the first act, Martin was notoriously, and to the knowledge of defendant, insolvent. That said act of 18th January, 1854, was a mere cover to shield the property of Martin from his creditors, and was not intended to convey title or possession; that the judgment on such executory process, herein issued, having been duly recorded prior to the date of the act of 5th May, 1856, could not be affected by the letter, which, not containing a description of the property, is without effect as to third persons, and they prayed that the injunction be dissolved, with damages.

In a former decree of the Court, the act of sale of 18th Jan. 1854, was declared simulated, null and void, but the injunction was perpetuated on

the ground that the ten days' notice, to defendant, as the third possessor, was not given before the order of seizure and sale was obtained.

On application by defendant, a rehearing was granted, and his counsel presses upon our consideration the principle as recognized in our law and jurisprudence, and applicable to this case, that, although the contract read by the light of the counter-letter, may not be an absolute sale; yet, as it has a real cause, it cannot be invalidated, and cites Art. 1894, C. C.; 12 A. 529; 1 A. 432; 6 N. S. 583, and other authorities.

The Act of 18th January, 1854, is an authentic act of sale in due form, and by its terms conveyed the property and possession absolutely to Chase; but by the counter-letter executed several days thereafter, the parties agreed and stipulated, that the property in question was *transferred* to Chase, as security for the payment of two specific debts, and not in payment thereof, giving Martin, the vendor, an opportunity to pay said debts within a fixed delay, and have the property *reconveyed* to him, and on his failure to pay any part of said debts, he was to forfeit all right in law or equity to any portion of said property, and Chase, the vendee, reserved the right to sell the same to pay said debts pro tanto.

It is evident that it was the intention of the parties to enter a serious contract, although not such a one as its language purports.

The debtor, by passing the title of his property to another, intended to make secure to two of his creditors, two debts, amounting to over $90,000, and actually due and owing, and put it beyond his own power to impair that security. Whatever may be its effect as to conferring an unjust preference or advantage, we cannot properly stamp it as an absolute simulation—a mere shield to cover a debtor's property from the pursuit of his creditors. It seems clear that Martin could make no disposition of the property to the prejudice of these claims. He could not, under any interpretation of the terms and stipulations of the counter-letter, treat the sale of 18th January as a simulation, and require the property to be reconveyed to him, without first paying the two debts, and plaintiffs possessing no greater rights than Martin, their debtors could do no more. They base their right to proceed against this property upon the tenor and effect of this counter-letter, and can derive from it no greater right or remedy than it reserves to their debtor.

As is said, in the case of *Wolf* v. *Wolf*, 12 An. 531, it does not follow, because parties have clothed their contract in one form instead of another, that it will avail in either. There is no such penalty declared by the lawgiver, and the Courts cannot supply it. There is nothing immoral in using the contract of sale as the security of a bona fide debt. As he may make an absolute donation of his property, saving the rights of the parties injured, we see no reason to declare an act void because the vendor has contented himself with a false course, a fictitious price, instead of inserting the true cause of the contract. C. C. 1894.

Viewing, then, the act of 18th January, 1854, on which Chase relies, as

having substance and reality, and not prohibited as to form and purpose, by law or good morals, we must apply the principle invoked by him, and not disregard it until duly set aside for legal cause.

It is therefore ordered, that the decree heretofore rendered by us be set aside, and it is now ordered that the judgment of the lower Court be avoided and reversed; and it is further ordered, that the injunction herein be perpetuated, with costs in both Courts.

HYMAN, C. J. adheres to the opinion formerly prepared and read by him.