No. 8069.

## WILLIAM S. CAMPBELL vs. JOHN P. H. SHORT.

In a contract for the delivery of coal by one of the contracting parties to the other, within a given time, and the contract is silent as to the quantity, parol evidence is admissible to show the real intention of the parties in this respect and to explain its meaning.

APPEAL from the Fifth District Court for the Parish of Orleans. Rogers, J.

*Singleton & Browne* for Plaintiff and Appellee.

*R. Shackelford* and *W. S. Benedict* for Defendant and Appellant.

The opinion of the Court was delivered by

TODD, J. The plaintiff seeks to recover of the defendant $1,595.20, an alleged balance due for coal sold and delivered during the year 1879. The claim grows out of the following contract:

" Agreement made and entered into this twenty-third day of October, A. D. 1879, by and between Wm. S. Campbell of the first part, and Jno. P. H. Short of the second part, both of the City of New Orleans.

" Witnesseth : That the said party of the first part does hereby covenant and agree, for the consideration hereinafter mentioned, to deliver upon the orders of the said party of the second part, within the city limits and with promptness and dispatch, whatever quantity of coal the said Short may order between this date and the 1st of January, 1880; said coal to be choice and well screened Pittsburgh coal, and measure to be determined by a weight of one hundred and eighty pounds to the barrel, and the party of the second part covenants and agrees, in consideration of the above, to pay the said party sixty cents per barrel for each and every barrel so delivered, and to pay for the said coal monthly, on the first day of each month succeeding the delivery, and not to be indebted to said party of the first part for more than fifteen hundred dollars at any time.

" As witness our hands to this agreement, signed in duplicate at New Orleans, this 23d day of October, A. D. 1879.

" Signed:                               WM. S. CAMPBELL,
                                        JNO. P. H. SHORT.

" Witness : R. D. SCRIVEN.

" We jointly and severally guarantee Wm. S. Campbell against any loss he may sustain through the failure of Mr. John P. H. Short to fulfil the conditions of the foregoing agreement, this agreement not exceeding the sum of fifteen hundred dollars.

" Signed :                              WILLIAM WOOD,
                                        ALEX. K. FINLAY."

Under this contract the plaintiff delivered to the defendant up to and including the 28th of November, 1879, according to plaintiff's statement, 4,005 barrels of coal, and according to the defendant's, 3,195 barrels.

It appears that about the fall of that year (1879) plaintiff had bought of certain coal merchants, A. Lambert & Co., 60,000 barrels of coal, with the privilege of 20,000 barrels more; and this firm to meet their engagements to plaintiff, the price of coal having greatly advanced in the meantime, arranged with the defendant, Short, by which he (Short) sold them orders on plaintiff to the amount of 50,000 barrels, and soon thereafter sold orders to S. S. McCune on plaintiff for 50,000 barrels more.   These orders the plaintiff refused to accept, and thereupon brought this suit for the balance due on the coal actually delivered to the defendant up to that time.   The defendant, after pleading the general issue, reconvened, and alleging that plaintiff had violated his contract by refusing to fill these orders to Lambert & Co. and McCune, and in other respects claimed damages against him on account of the loss of profits on these orders and from other causes to the amount of $44,231.25.

There was judgment in favor of plaintiff for $1,239.75, and rejecting the reconventional demand, from which the defendant has appealed, and plaintiff has asked an amendment of the judgment, to the effect of declaring the contract in question cancelled and annulled.

Leaving out of view the contract and its alleged violation, whether by plaintiff or defendant, as respectively charged, we think the conclusion reached by the District Judge, as to the amount or balance owing for the coal delivered to the defendant, as shown by the judgment, is about correct.

In regard to the alleged violations of the contract urged, the plaintiff excuses himself for refusing to fill the two orders for the 100,000 barrels of coal mentioned, on the ground that the defendant had actively violated the contract in two particulars : first, in becoming indebted for coal sold and delivered to a larger amount than $1,500, in contravention of the stipulation in the agreement, and in giving orders for the large quantities of coal mentioned to Lambert & Co. and McCune, against and beyond, as alleged, the true intent, spirit and meaning of the contract.

There is no force in the first proposition.   Suffering his indebtedness to exceed $1,500, admitting it to be so, was not an active breach of the contract.

The alleged violation in the other respect mentioned brings up for consideration the contract itself, its nature, meaning and construction, and the further question, which is the pivotal question in the case,

whether parol evidence was properly admitted to show its meaning and intent.

As stated, the contention between the parties is whether the quantity of coal that plaintiff was obliged to deliver under the contract was or not unlimited and indefinite, and whether or not the large orders referred to were within the scope and intent of the agreement.

The contract is silent as to the precise quantity of coal that defendant would or could order within the term prescribed. There are, however, some stipulations therein which seem to point to what was in the contemplation of the parties in this respect at the time they made the agreement. For instance, the defendant was to pay for the coal monthly, but was not to be indebted at any time more than $1,500, from which we might infer that his monthly orders were not to exceed that sum. This view is strengthened by the fact that the sureties of the defendant, by their obligation annexed to the agreement, guarantee the plaintiff (quoting therefrom) " against any loss he may sustain through failure of Short to fulfil the conditions of the agreement, this agreement not exceeding the sum of $1,500," evidently contemplating that that sum would cover the scope or extent of the entire agreement as to quantity.

It is well known that the price of coal fluctuates—as in this case plaintiff was to sell the coal to defendant at 60 cents per barrel, and before the term expired it had gone up to a dollar. Are we to presume that it was the intention of the parties that they would stand the risk of these fluctuations in the market to an unlimited extent, utterly regardless how their respective losses or gains might be swelled by the quantity to be bought or sold, and without giving a thought whether it would be in the power of either party to meet engagements which, in the absence of restrictive language, might assume vast and indefinite proportions? For accepting the defendant's construction of the instrument, he could demand one or a million barrels of coal, or as much as all the mines in the country could supply. Is it not more reasonable to suppose that there was some limit in the minds of the contracting parties when they signed the agreement, and that limit was suggested or fixed by the relative conditions of the parties with respect to the coal trade, in which they were both engaged, and of which conditions they were mutually cognizant at the time? If that be so, then it would seem proper, by way of *explaining* the contract in this particular, not adding to it or altering it, that evidence might be introduced to prove these conditions, and in this connection to show

Campbell vs. Short.

how long the defendant had been engaged in the trade, the extent of his business each year or the number of barrels bought or sold by him, and other facts pertaining thereto, calculated to throw light as to the intent or understanding of the parties on this material point. And after scrutinizing the writing and showing these extraneous facts or .circumstances, if there was still doubt, that doubt, it would seem, might be explained away under a well recognized rule of evidence, by admitting proof of what was said by the parties at the.time on this point, wherein the writing was silent.

The rule referred to is laid down by Greenleaf in these words:

"It is a leading rule in regard to written instruments, that they are to be interpreted according to their subject matter, it is obvious that parol evidence must be resorted to in order to ascertain the nature and qualities of the subject to which the instrument refers. Evidence which is calculated to explain the subject of an instrument is essentially different in its character from evidence of verbal communications respecting it. Whatever, therefore, indicates the nature of the subject is a just medium of interpretation of the language and meaning of the parties in relation to it, and is also a just foundation for giving the· instrument an interpretation, when considered relatively different from that which it would receive if considered in the abstract." 1 Greenleaf, Sec. 286; 5 An. 743; 13 An. 25; 19 Wall. 561.

The evidence admitted on this point, and of which the appellant complains, taken in connection with the clauses of the instrument, to which we have specially referred above, leave no doubt that it was in the minds of the parties when this contract was made, to measure the quantity of coal to be delivered .by the quantity that the defendant had been in the habit of ordering in the ordinary course of his business in past years, which ranged from 10,000 to 15,000 barrels.

If this were so, then the drawing of orders for such unusual and immense quantities, under the circumstances shown, might certainly be regarded as violative of the spirit of the contract, and the plaintiff was not bound to fill them.

We think that the defendant, by his conduct and his testimony, evidently felt a consciousness that his acts in these respects were not exactly in keeping and harmony with his agreement. It appears when Lambert & Co. first applied to him for the order mentioned, he declined to entertain the proposition, (as he expressed it) " so long as Mr. Campbell honorably fulfilled his contract with me." . And again he says: "I then felt the moral scruples that I might have had in selling Mr. Campbell's coal (I never doubted my legal right) were dissolved by Mr. Campbell's actions." If this were a plain business

transaction, by which the defendant had the clear right to demand any quantity of coal he might see fit, and he so understood it, we cannot exactly perceive how there could have been any room for "moral scruples" in the matter.

We think the conclusions of the District Judge about right, and shall refuse the amendment, and affirm the judgment with costs.

Poché, J., being absent when the case was tried, takes no part.