### COSTELLO v. EDDY.

*(Supreme Court, General Term, Third Department.* November 26, 1890.)

1. GOOD-WILL—BREACH OF CONTRACT—PAROL EVIDENCE.
> On a sale by defendant to plaintiff of a bakery business at S., a written contract and bill of sale were executed, which described the property sold as "the leases and business carried on by said [defendant] as a bakery business" in S. It did not in terms convey the good-will of defendant, nor contain any express agreement that defendant would not again engage in such business at S. *Held*, that plaintiff could not, upon parol evidence of an agreement by defendant, during the negotiations, not to carry on the business of a baker at S., recover damages from him for breach of such alleged agreement.

2. SAME.
> Plaintiff could not recover from defendant for carrying on such business at S., as a breach of defendant's agreement in the bill of sale "to warrant and defend the sale of the said property and interest, as herein stated."

Appeal from circuit court, Saratoga county.

Action by Thomas Costello against George B. Eddy. From a judgment for defendant, entered on the dismissal of the complaint at the trial, plaintiff ap- peals.

Argued before LEARNED, P. J., and LANDON and MAYHAM, JJ.

*C. H. Sturges*, for appellant. *Charles L. Lester*, for respondent.

MAYHAM, J. This is an appeal from a judgment for the defendant, en- ·tered upon a nonsuit at the circuit. The action was brought to recover dam- ·ages for an alleged breach of an alleged contract not to carry on the business

of a baker at Saratoga Springs, and also for the alleged breach of another agreement to warrant and defend the sale of defendant's business to the plaintiff. The case shows that about the 20th of September, 1887, plaintiff and defendant had some verbal negotiations upon the subject of the purchase by plaintiff of the defendant's stock and business, in which plaintiff proposed to purchase of the defendant his business, and everything pertaining to it, and defendant expressed his willingness to sell, stated his price, and some of the reasons why he was willing to sell out. No agreement was at that time reached, but the interview was postponed, and negotiations kept open until another time, which was fixed by the parties. At the next interview upon the subject, the parties agreed upon the terms and conditions of sale, and plaintiff swears that, at that time, "we finally agreed that he would sell me his business, and the horses and wagons, and whatever he had there." Witness also testified that in the first and last conversation defendant said "he was going out of business, and not to engage in the bakery business in Saratoga." Before the receipt of this evidence, defendant offered and read in evidence the written contract and bill of sale made between these parties, to which this evidence related. The evidence of these interviews was received by the court, subject to the defendant's objection and exception. In the last interview, and after the parties had agreed, plaintiff proposed having a written bill of sale, which was agreed to, and a draughtsman selected, and the parties subsequently met at his office, and the contract or memorandum of sale in writing was drawn by him, and signed by the parties. Neither the written contract nor bill of sale contained any express agreement that the defendant would not again engage in the bakery business in Saratoga. The plaintiff offered to prove, in substance, that the defendant had violated the parol agreement, and also the covenant of warranty in the bill of sale, by engaging in the bakery business in Saratoga after this sale to the plaintiff. The learned trial judge held that, as the restraint upon the defendant from again engaging in the baking business in Saratoga was, under the evidence, the most important element in the contract, it should have been incorporated in it, and, not appearing there, the written contract should govern. We think the rulings of the trial judge on these questions were correct.

The learned counsel for the appellant undertakes to separate what he claims to be the verbal agreement of the defendant not again to engage in this business in Saratoga from the balance of the contract, and to treat it as collateral to the sale of the leases, business, and teams and fixtures; but I do not see how this contention can be upheld. Adopting the plaintiff's theory of the contract, it was to sell the business, the stock, and the good-will of the defendant, and, as to him, the exclusive right of engagement and monopoly of the business of carrying on a bakery in Saratoga; in consideration of all of which the plaintiff agreed to pay $2,000. Now, suppose that in drawing the contract all other articles, rights, and privileges, intended to be transferred by the parties, had been specified in the contract, except the horses and harness, could the plaintiff, in an action at law for damages for a failure to deliver the horses and harness, prove, notwithstanding the writing, that they were embraced in the sale, and paid for by the $2,000? We think not. Doubtless such a mutual mistake in the written contract might be corrected, and the contract reformed in equity, but, in an action at law, the terms of the writing would prevail, and the legal rule would apply, that all the agreement of the parties, as to what the defendant sold, and what was purchased by the plaintiff, was merged in the writing, and that would control. That rule is quite elementary, and ordinarily citations of authorities would be unnecessary; but in this case, where exceptions to the rule might, if the distinctions were not observed, override the rule itself, a brief reference to authorities, for the purpose of noting the distinctions, is allowable. In *Bayard* v. *Malcolm*, 1 Johns. 467, KENT, C. J., incidentally lays down the rule as fol-

lows, in discussing a question of pleadings: "Nor could a parol warranty have been shown if the suit had been brought on one, for the contract, being reduced to writing, excludes all other verbal negotiations and promises as being resolved into writing, which is the consummation and only evidence of the agreement of the parties." In *Colwell* v. *Lawrence*, 38 N. Y. 73, MILLER, J., in delivering the opinion of the court, says: "The rule is well settled that all conversations had prior to the execution of the writing become merged in the instrument when executed." In *Wilson* v. *Deen*, 74 N. Y. 534, RAPALLO, J., in writing for the court, in upholding and following this rule in that case, uses this language: "We think it impossible to sustain these conclusions without disregarding the established rule of law that a written contract merges all prior and contemporaneous negotiations and oral promises in reference to the same subject, and that, when the terms of a lease are in writing, the rights and duties of the parties depend upon the terms or legal intendment of the lease itself; or, as otherwise expressed, that it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, are embraced in the writing." In *Filkins* v. *Whyland*, 24 N. Y. 339, WRIGHT, J., in delivering the opinion of the court, says: "When a contract is consummated by writing, the presumption of law is that the written instrument contains the whole of it, and it will not be allowed to show oral representations or stipulations preceding or accompanying the execution of the instrument differing from or not inserted in it. The agreement to which the contractors bound themselves is to be ascertained exclusively by the writing." In *Schmittler* v. *Simon*, 114 N. Y. 183, 21 N. E. Rep. 162, the court reiterates this general rule in this form: "The general rule is that, when an agreement is reduced to writing, it, as between the parties, is deemed to merge and overcome all prior or contemporaneous negotiations and declarations upon the subject, and that no oral evidence is admissible to vary, explain, or contradict its terms." The authorities relied upon to establish the plaintiff's contention fail, we think, in their application to this case, and are distinguishable from it in principle. They apply to a distinct, collateral agreement on one side, which influences and forms the consideration of the agreement on the other side. In *Batterman* v. *Pierce*, 3 Hill, 171, the consideration for the note, which was signed by one party only, was not expressed in it, and the court held that it was competent to prove, as between the parties, the conditions upon which it was given.

In the case at bar, the contract was signed by both parties, and the consideration for the $2,000 was expressed in the writing, and the instrument purports, upon its face, to be a complete agreement. *Potter* v. *Hopkins*, 25 Wend. 419. In *Chapin* v. *Dobson*, 78 N. Y. 74, the writing, signed by one party, and approved by the other, was that the machinery should be delivered "on terms stated." And the court put the decision on the ground that the original contract was verbal and entire, and part only reduced to writing, and cited on that head 25 Wend. and 3 Hill, *supra.* In *Dodge* v. *Zimmer*, 110 N. Y. 43, 17 N. E. Rep. 399, parol evidence was allowed to explain an ambiguity appearing on the face of the paper or agreement, and matters not claimed to be embraced in it, or to constitute a part of it, was allowed, so that we fail to see how that case is applicable in principle to the one at bar. The distinction seems to be that, where the writing purports upon its face to contain the entire agreement of the parties, it must have that effect; but when, upon its face, it purports to rest partly in writing and partly in verbal agreement or negotiation, it may be proved and enforced as a whole, or if it appears that a parol contract is independent of, and collateral to, a written agreement, it may be sued upon as an independent and distinct cause of action, leaving the writing to stand and to be enforced according to its terms. *Chapin* v. *Dobson, supra.* But that rule is not applicable to this case.

But the plaintiff insists that, by the bill of sale, the defendant conveyed to

him the good-will of the business, and, by his covenants of warranty in that instrument, he was bound not to engage in a similar business in Saratoga Springs, and that it was competent for him to prove that defendant had conducted that business there, to establish a liability for a breach of such warranty. The bill of sale does not, in terms, convey the good-will of the defendant, nor does it contain any express covenant that he will not again engage in that business in the village of Saratoga Springs. The language of the granting clause is: "Have bargained and sold, and by these presents do grant and convey, unto the said party of the second part, his executors, administrators, and assigns, the lease and business carried on by said Eddy as a bakery business on Broadway and Philadelphia streets, Saratoga Springs; also the horses, wagons, tools, apparatus, furniture, fixtures, stock, goods on hand, (excepting book-accounts;) also all the leases covering premises on Philadelphia street, the bakery on Broadway, the lease of Dr. Ford's barn in the alley; and also all the interest of said George E. Eddy of, in, and to the house on Bullard street, and the right to maintain same thereon, heretofore enjoyed by said Eddy; also all interest of the party of the first part to the oven in the Philadelphia-Street store,—to have and to hold the same unto the said party of the second part, his executors, administrators, and assigns, forever." Then follows the covenants of warranty, as follows: "And I do hereby, for myself, my heirs, executors, and administrators, covenant and agree to and with the said party of the second part to warrant and defend the sale of the said property and interest as herein stated, hereby sold unto the said party of the second part, his executors, administrators, and assigns, against all and every person and persons whatsoever." The plaintiff insists that these terms were sufficient to transfer, and did transfer, to him the business and good-will thereof.

In *Boon* v. *Moss*, 70 N. Y. 473, CHURCH, C. J., adopts the definition of "good-will," as given by Judge STORY, as follows: "This good-will may be properly enough described to be the advantage or benefit which is acquired by an establishment beyond the mere value of the capital stock, funds, or property employed there, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers, on account of its local position or common celebrity or reputation for skill or influence or punctuality, or from other accidental circumstances or necessities, or even from ancient partialities or prejudices." And the court in this case held that the bill of sale, in these words: "The Watertown Reunion, machinery, type of all descriptions, newspaper and jobbing materials, tools, implements, etc., appertaining to said printing business,"—constituted a sale of the good-will of the establishment as one of the elements of value passing by the sale, although not specifically mentioned; but the question whether the vendor's engaging in a similar business at some other place was a breach of the covenants in the bill of sale did not arise, and was not discussed, in that case, and the case of a newspaper with its unearned subscription list presents the strongest reason for a sale, without any mention in the bill of transfer carrying with it the good-will of the concern. I have been unable to find any other cases that hold that a sale of the property, and necessarily the business carried on, in, or upon it, without any express agreement, is a sale of "good-will;" and, while there are strong reasons for holding that the sale of a newspaper, with its press, type, and fixtures, and its subscription list, is a sale of the "good-will" of the business, yet, if it operates as a restraint of trade, it should not be extended to other business not similarly situated, without an express stipulation in the sale; and to this effect, we think, is the weight of English and American authority. But even a sale of "good-will" does not necessarily, within the authorities, exclude the vendor from engaging in similar business in the same village on another or different stand.

In *Churton* v. *Douglas*, 1 Johns. Eng. Ch. 176, before Vice-Chancellor WOOD, by a written instrument the defendant sold to the plaintiff "all his

share, right, and interest in the trade or business carried on by him and the plaintiff, at Bradford, in copartnership, and under the firm name of John Douglass & Co., and the 'good-will' thereof." The defendant also leased the plaintiff the premises in which the business was conducted, for seven years. Subsequently the defendant opened a store for the same business next door to the plaintiff. A temporary injunction was granted, restraining the defendant from using the name or carrying on the same business in the immediate vicinity. The vice-chancellor, upon the final hearing, held expressly that "the authorities are conclusive upon the point that the sale of the 'good-will' of a business without more does not imply a contract on the part of the vendor not to set up a similar business himself. * * * Upon a sale of the 'good-will,' the vendor is not precluded from carrying on a precisely similar business, with all the advantages from his own labor and industry, and from the regard people may have for him, and that in a place next door to the very place where his former business was carried on." The same case holds that he would be precluded from the use of the firm name or trade-mark used by it.

In *Cruttwell* v. *Lye*, 17 Ves. 346, it was held that, where a party sells the "good-will" of the business, he may engage in the same kind of business, but he must not represent that he still owns the business which he has sold. In such case the court held that the defendant has not contracted against setting up business in opposition to the business sold by him to the plaintiff, but he must set it up fairly and distinctly, as a separate business.

In *Washburn* v. *Dosch*, 68 Wis. 436, 32 N. W. Rep. 551, it was held that the sale of the "good-will" of a business will not of itself alone be sufficient to preclude the seller from engaging in a separate and independent business of the same kind, in the same village or city. There should be an agreement to that effect, based upon a good and valuable consideration, and not contrary to law or public policy.

If, in the case at bar, the contract had in terms prohibited the defendant from engaging in this business in Saratoga Springs, it would doubtless have been a valid contract, not against public policy for being in restraint of trade, but it cannot be enforced as a contract in restraint of trade without some provision in it restrictive of the defendant's right to carry on a bakery; and it contains no such provision. Nor do the covenants of warranty reach this case. They can only be construed as covenants relating to the property sold, and the right of the plaintiff to the free, unobstructed enjoyment of the same. Any lawful interference with either of the bakeries or the stock, teams, wagons, etc., would be a violation of the covenants of warranty; but we think it cannot fairly be said that these covenants went to the extent of guarantying to the plaintiff the exclusive business of carrying on a bakery in the village of Saratoga Springs. We think on the whole case the rulings of the learned judge were correct. Judgment affirmed, with costs. All concur.