(37 South. 24.)

No. 15,016.

EUGENE DIETZGEN CO. v. KOKOSKY.

(June 20, 1904.)

**GOOD WILL—SALE—COMPETITION—INJUNCTION —DEFENSES.**

1. The plaintiff company purchased from the firm of S. T. Beer and Herman Kokosky its assets, business, and good will. In the act of sale the individual members of the firm each bound himself not to engage in competitive business in New Orleans during a certain period. After the sale Kokosky was taken into the employ of the purchasing company, but, after being so employed, was discharged. He thereupon entered into competitive business. The plaintiff obtained an injunction restraining him from continuing to do so. Defendant in injunction moved to set aside the injunction on the ground that the obligation on his part not to engage in business was conditioned upon the correlative obligation of plaintiff to employ him during the same period, and that his illegal discharge liberated him, ipso facto, from his obligation. Defendant concededly carrying on a competitive business in violation of the obligation which he had assumed, plaintiff had the right to an injunction, and the defendant had not the legal right to tender, for the purpose of having the injunction dissolved, issues as to whether he had been properly or improperly discharged, and that the resulting effect would be, ipso facto, to absolve him from his obligation not to engage in business. Those issues would have to be tendered and adjudicated upon in other proceedings, and defendant's rights in that respect were reserved.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; John St. Paul, Judge.

Action by the Eugene Dietzgen Company against Herman Kokosky. Judgment for plaintiff. Defendant appeals. Affirmed.

Dart & Kernan, for appellant. Charles Rosen, for appellee.

### Statement of the Case.

NICHOLLS, J. The plaintiff alleged that by act executed on November 26, 1902, before Charles Rosen, notary, it purchased from the firm of S. T. Beer and Herman Kokosky, and the individual members thereof, the business of said firm, located in New Orleans, and since said date had operated said business for its own account. That, as one of the considerations of said purchase, said Samuel T. Beer and Herman Kokosky, and each of them, did expressly agree that they would not within the next five years succeeding the date of said agreement enter into or carry on the business of purchasing, selling, or manufacturing drawing materials or surveying instruments in this city, whether in their own names, or for the account of anybody else, directly or indirectly, as dealer or on commission, or as manager, proprietor, salesman, or otherwise, without the written consent of the said Eugene Dietzgen Company, nor within the next three months from the said date engage in the business of photographic

supplies in this city, directly, or indirectly, in any of the capacities aforesaid or otherwise, without its written consent.

That, in violation of his said agreement, and without the consent of petitioner, Kokosky was then engaged, and had been engaged since the 4th day of June, 1903, in carrying on the business of purchasing, selling, and manufacturing drawing materials, and surveying instruments at No. 157 Baronne street in this city, as vice president and manager, director, stockholder, and salesman of the Technical Supply Company, Limited, a corporation organized under the laws of this state by act on the 4th day of June, 1903, organized for the express purpose of carrying on the business of purchasing, selling, and manufacturing drawing materials, surveying instruments, and photographic supplies, and had since June 4, 1903, actually engaged in carrying on said business at said place as aforesaid. That the nature of said business was such as to be in great measure influenced and controlled by considerations of friendship and acquaintance, and other personal considerations, and this was one of the reasons for which petitioner obtained the agreement of Kokosky that he would not, for the period mentioned, in this city, enter into said business. That Kokosky had advertised in the local press the fact of his entering into said business. That Kokosky, in the furtherance of his said business, had actively solicited the trade and patronage of petitioner's customers, and had sought and was seeking to divert them from trading as heretofore with it (petitioner), and had in some cases actually diverted some of its customers from trading as heretofore with it to trading with him, and with the said Technical Supply Company, Limited.

That the said breach and violation of his contract and agreement by Kokosky was causing and would cause it (petitioner) irreparable injury and damage, by diverting from its business its trade and custom. That

damages for said breach would be inadequate compensation to it, and it could have no adequate relief, except by the issuance of a writ of injunction restraining and enjoining said Kokosky from doing anything in contravention of his said obligation. That, if Kokosky was permitted to continue in the commission of the said acts complained of, it would cause damage to petitioner in an amount exceeding $2,000.

In view of the premises, it prayed that a writ of injunction issue, directed to said Kokosky, enjoining and prohibiting him from entering into, carrying on, conducting, or engaging in, without the written consent of petitioner, for the period of five years from November 26, 1902, the business of purchasing, selling, or manufacturing drawing materials or surveying instruments in this city as vice president, manager, director, stockholder, or salesman of the Technical Supply Company Limited, or in any other capacity whatsoever, or in his own name, or for the account of anybody else, directly or indirectly, as dealer or on commission, or as manager, proprietor, salesman, or otherwise, and from in any wise violating his said contract of November 26, 1902, with it, as set forth in act passed before Charles Rosen, notary public, on that date; that said Herman Kokosky be cited; and that there be judgment in favor of petitioner, Eugene Dietzgen Company, against defendant, Herman Kokosky, perpetuating and maintaining said writ of injunction; and for all general and equitable relief.

The defendant appeared and filed a rule to show cause why the injunction should not be dissolved on the following grounds:

"(1) That said injunction issued without justification or warrant in law.

"(2) That, as an inducement to mover to make the contract declared upon, the plaintiff covenanted to employ him for a period longer than the prohibitive period set forth in the contract, at a stipulated salary, and a certain interest in the profits of plaintiff's business in New Orleans. That said employment contemplated a position of equal dignity to that which

he had previously held as a member of the selling firm, and he was in fact to be the representative of the plaintiff in New Orleans. That, after the execution of the contract sued on, plaintiffs carried out said additional agreement, and employed mover up to June 1, 1903, when without cause or provocation, they dismissed mover from their employ. That it would be inequitable to enforce the obligation of the said contract sued upon, under these circumstances.

"(3) That, to the knowledge of plaintiff, mover received no advantage or pecuniary consideration in the transaction sued on, and, but for the covenant of employment and interest in the profits, mover would never have bound himself to abstain from engaging in business in the same line in the city of New Orleans. That plaintiffs were guilty of fraud and bad faith in deliberately violating said agreement.

"(4) That mover was and had been a citizen of Louisiana, and a resident of New Orleans. That he was a man of family, and had no other art, trade, or profession than the skill and knowledge of the trade and business referred to in the instrument sued upon, and the enforcement of the prohibition would deprive himself and family of the means of making a living in the city of New Orleans and state of Louisiana, where all of his friends, social connections, and family were situated, and, in law, under the circumstances, the agreement in question was immoral, illegal, and void, and not binding upon mover."

It was agreed between the parties that as the prayer of plaintiff's petition was only for the injunction, and the rule brought up the entire merits of the case, the court, in deciding the rule, should dispose of the entire case, and render one judgment to cover the rule and the merits of the case, without further pleading or further evidence on the trial.

The district court rendered judgment dismissing the rule taken to dissolve the injunction, and made the same perpetual, at the costs of the plaintiff in rule, reserving to him any and all rights which he might otherwise have against the Eugene Dietzgen Company. In its judgment it adjudged and decreed that the ruling made by it on the trial admitting the introduction of parol evidence be recalled and set aside, and it ordered that the objection offered by the plaintiff in the suit of defendant in rule to the admission of parol testimony be maintained, and that said testimony be excluded. Plain-

tiff in the rule and defendant in the suit appealed.

Plaintiff, in his brief, makes the following points in the syllabus of his brief:

"(1) A contract by which one binds himself not to engage in a competing business in a particular place for a limited period is valid. Wintz v. Vogt, 3 La. Ann. 16; Verges v. Forshee, 9 La. Ann. 294; Bergamini v. Bastian, 35 La. Ann. 63, 48 Am. Rep. 216; Solomon v. Diefenthal, 46 La. Ann. 900, 15 South. 183; Goldman v. Goldman, 51 La. Ann. 772, 25 South. 555; Meyer v. Labau, 51 La. Ann. 1731, 26 South. 463; Felix v. Weiss, No. 3,174, Court of Appeal; Eddy on Combinations, vol. 2, pp. 794, 812.

"(2) Parol evidence is not admissible to vary, contradict, or add to the stipulations of a written contract, complete on its face, in the absence of fraud or error. Rev. Civ. Code, arts. 2234, 2236, 2276; Moore v. Hampton, 3 La. Ann. 195; Cary v. Richardson, 35 La. Ann. 509; Clark's Ex'rs v. Farrar, 3 Mart. (O. S.) 252, 254, 255; Hart v. Clark's Ex'rs, 5 Mart. (O. S.) 614; Hebert & Dumare v. Maxime Dupaty, 42 La. Ann. 345, 7 South. 580; D'Aquin v. Barbour, 4 La. Ann. 441; Gould v. Bridges, 3 Mart. (N. S.) 692; Lynch v. Burr, 7 Rob. 96; Millard v. Smith, 25 La. Ann. 492; Wade v. Percy, 24 La. Ann. 173; City of Shreveport v. Le Rosen, 18 La. Ann. 577; Lesseps v. Wicks, 12 La. Ann. 739; Greenleaf, Evidence, 276; Ker v. Ker, 42 La. Ann. 870, 8 South. 595; 2 Wharton, Evidence, 1014; Naumberg v. Young, 44 N. J. Law, 331, 43 Am. Rep. 380; Welz v. Rhodius, 87 Ind. 1, 44 Am. Rep. 776; Tracy v. Union Ironworks Co., 104 Mo. 193, 16 S. W. 201.

"(3) Parol is admissible to show a condition precedent to the existence of a contract, for the purpose of showing there never was any agreement at all, but not to vary or add to a written agreement. Ware v. Allen, 128 U. S. 590, 595, 9 Sup. Ct. 174, 32 L. Ed. 563; Burke v. Dulaney, 153 U. S. 228, 14 Sup. Ct. 816, 38 L. Ed. 698; Pym v. Campbell, 6 Ell. & Bl. 370, 373.

"(4) Oral testimony is allowed to show a true and sufficient consideration when the one stated does not exist, in order to support the act which is attacked; but it is 'only when the authentic act is silent on the question of consideration, or in cases in which error, fraud, ambiguity, or some other cause has been alleged, or in which third parties are the movers,' that such evidence is received. Vial v. Moll, 37 La. Ann. 205; Brown v. Brown, 30 La. Ann. 969; Chaffe v. Scheen, 34 La. Ann. 689; Dickson v. Ford, 38 La. Ann. 736; Lamotte v. Lamotte, 48 La. Ann. 572, 19 South. 570; Landry v. Landry, 40 La. Ann. 229, 3 South. 728; Mossop v. Creditors, 41 La. Ann. 297, 6 South. 134; Delabigarre v. Second Municipality, 3 La. Ann. 235; Jackson v. Miller, 32 La. Ann. 434; Wolf v. Wolf, 12 La. Ann. 529; Bailey v. Chase, 18 La. Ann. 732; Campbell v. Short,

35 La. Ann. 447; and cases cited in Dickson v. Ford, 38 La. Ann. 736.

"(5) Fraud must be caused or continued by artifice, by which is meant either an assertion of what is false, or a suppression of what is true, in relation to a material part of the contract. Rev. Civ. Code, art. 1847; Ashley v. Schmalinski, 46 La. Ann. 499, 15 South. 1; Watson v. Bank, 22 La: Ann. 14; Amer. & Eng. Ency. Law (2d Ed.) vol. 14, pp. 29, 33.

"(6) A contract for the sale of a business and the good will, and an agreement not to enter into a competing business, is a unit, and the consideration includes the whole contract. Eisel v. Hayes (Ind. Sup.) 40 N. E. 119; Felix v. Weiss, No. 3,174, Court of Appeal.

"(7) An agreement on a separate matter not mentioned in a written act is a distinct, independent contract, the breach of which is enforceable in a separate, but cannot be set up to defeat the written, act. Kenyon v. Berghel, 13 La. 133; Costello v. Eddy, 12 N. Y. Supp. 236; Id., 128 N. Y. 650, 29 N. E. 146.

"(8) Where one alleges that he was induced by the vendee to sign a contract, to sustain such claim he must affirmatively prove that fact.

"(9) Where one employs another under the right to discharge him if his services are not satisfactory, if the services are not to the satisfaction of the employer he has the right to discharge the employé. Hotchkiss v. Gretna Ginnery & Compress Co., 36 La. Ann. 517.

"(10) Where one is employed in the business of another, and expends excessive amounts for traveling expenses, without any accounting thereof, the employer has a right to discharge him for cause."

The defendant quotes the following authorities:

"(1) Civ. Code, arts. 1897, 1899, 1900, 2046, 2047.

"(2) Saramia v. Courrege, 13 La. Ann. 25; Dickson v. Ford, 38 La. Ann. 736; Rivers v. Oaklawn Sugar Co., 52 La. Ann. 762, 27 South. 118.

"(3) Fraud or error in contracts may always be shown by parol. It makes no difference that the contract in the particular case is a sale of real estate by notarial act. Le Bleu v. Savoie, 109 La. 680, 33 South. 729; Succ. of Bellande, 41 La. Ann. 493, 6 South. 505; 1 Greenleaf on Evidence (16th Ed.) p. 442; Hennen's Digest, verbo, "Evidence," XV, h. 12; Bauduc v. Conrey, 10 Rob. 466.

"(4) It is competent to show the existence of a contemporaneous agreement resting in parol and written evidence. It is sought in this case to show that there was a contemporaneous agreement between Kokosky and plaintiff, the breach of which would justify his release from the agreement not to engage in a competitive business. Kenyon v. Berghel, 13 La. 136; Ware v. Allen, 128 U. S. 590, 9 Sup. Ct. 174, 32 L. Ed. 563; Burke v. Dulaney, 153 U. S. 228, 14 Sup. Ct. 816, 38 L. Ed. 698.

"(5) While parol evidence cannot be admitted to vary, alter, or qualify a written instrument, yet it is clearly admissible to show the circumstances surrounding the parties at the time of the execution of an instrument, in order that the court may put itself in the place of the contracting parties, and thus see how the terms of the instrument affect the property or subject-matter of the contract. Railway Co. v. Beeler (1891) 90 Tenn. 548, 18 S. W. 391; Wolfe v. Dyer (1888) 95 Mo. 545, 8 S. W. 551; Baker v. Hall (1893) 158 Mass. 361, 33 N. E. 612; McHugh v. Gallagher (1892) 1 Tex. Civ. App. 196, 20 S. W. 1115; Taylor's Evidence, 808, 15; Weeks v. Medler (1878) 20 Kan. 57, 64.

"(6) Where the execution of a written agreement is procured by giving a parol agreement, such agreement can be shown. It is settled by a considerable line of authority that where the execution of a written agreement has been induced upon the faith of an oral stipulation made at the time, but omitted from the written agreement, though not by accident or mistake, parol evidence of the oral stipulation is admissible, although it may add to or contradict the terms of this written contract. Among the cases establishing this principle are Chapin v. Dobson, 78 N. Y. 74, 34 Am. Rep. 512; Ferguson v. Rafferty, 128 Pa. 337, 18 Atl. 484, 6 L. R. A. 33; Barnett v. Pratt (1893) 37 Neb. 349, 55 N. W. 1050; American Ass'n v. Dahl (1893) 54 Minn. 355, 56 N. W. 47; Durkin v. Cobleigh (1892) 156 Mass. 108, 30 N. E. 474, 17 L. R. A. 270, 32 Am. St. Rep. 436; Cole v. Hadley (1895) 162 Mass. 579, 39 N. E. 279.

"(7) Even if an employer has the right to discharge his employé because of dissatisfaction with him, a reasonable cause for dissatisfaction must exist. Civ. Code, art. 2749; Tete v. Lanaux, 45 La. Ann. 1343, 14 South. 241; Jones v. Jackson, 22 La. Ann. 113; Leche v. Claverie, 25 La. Ann. 308. Hotchkiss v. Gretna Ginnery, 36 La. Ann. 517, does not apply to a case where the dissatisfaction is a mere pretext."

## Opinion.

On the 26th of November, 1902, by notarial act before Charles Rosen, notary, the commercial firm of S. T. Beer & Co., and Samuel T. Beer and Herman Kokosky, the individual members, sold to the plaintiff the business of said firm, including the stock of goods, furniture, fixtures, and apparatus, of all character, open accounts, bills receivable, choses in action, state, city, and other licenses, and claims due and owing to said firm, of every character and description, and all the assets belonging to the said business, including the good will of said business, for and in consideration of the price and

sum of $16,730.53, whereof the purchaser paid cash $9,730.53, and the purchaser assumed and obligated itself to pay in the place and stead of said vendors the liabilities of said firm, amounting to said sum. It was further agreed in said act between the parties that the purchaser assumed the lease of the building No. 145 Baronne street, in which the firm of Beer & Co. were doing business, in the place and stead of Beer & Co. It was further agreed that the purchaser did not assume any of the personal liabilities of either Samuel T. Beer or of Herman Kokosky.

It was further expressly agreed by Samuel T. Beer and Herman Kokosky, and each of them, that they would not, within the next five years succeeding the date of the sale, enter into or carry on the business of purchasing, selling, or manufacturing drawing materials or surveying instruments in New Orleans, whether in their own names, or for the account of anybody else, directly or indirectly, as dealer or on commission, or as manager, proprietor, salesman, or otherwise, without the written consent of the purchaser, nor within three months of the date of the sale, in the business of photographic supplies in New Orleans, directly or indirectly, in any of the capacities aforesaid or otherwise, without the written consent of the purchaser.

The language of this act is clear and unambiguous, and states the precise agreements which the parties therein entered into. There is no claim made that there was error or fraud in the confection of the act, and it is not pretended that the consideration for the sale has not been fully paid.

After that sale was executed, Kokosky went into the employ of the purchasers, Dietzgen & Co., and so remained until he was discharged by them. Had he, by reason of that discharge, sued the firm for breach of contract, all the facts and circumstances under which the contract of employment was entered into, and all of the terms and conditions of the contract, would have formed the legitimate subject of investigation before us. The question as to the length of time for which the firm had engaged him, the question whether it had the right to discharge him, and the question as to what the extent of the relief which defendant would be entitled to in case he was found to have been improperly discharged, would be presented to us directly for adjudication. But defendant did not sue plaintiff for a breach of contract. Assuming that his discharge from employment released him, ipso facto, from the obligation which he had entered into in the act of sale before Rosen, notary, of not engaging in business as therein stated, he has, notwithstanding the obligation so assumed by him, concededly engaged in such business in New Orleans, relying upon justifying his action by proof that that obligation had been conditioned as to its continued existence by the fact that he should be simultaneously retained by, and engaged in the corresponding business of, the Dietzgen Company. This act on the part of the defendant was met by the present injunction, restraining him from so doing on the ground that he was therein violating the agreement which he had entered into in the act before Rosen.

On the trial of the case, defendant offered to prove by written and oral evidence that it was the agreement of employment which moved him to sign the stipulation against engaging in the same kind of business. The evidence was received over plaintiff's objections, and a bill was reserved by the plaintiff. After argument, the court, in deciding the case, recalled its ruling, excluded the evidence from consideration, and rendered judgment in favor of the plaintiff.

Plaintiff had objected to the evidence referred to on the ground that the authentic act constituted full proof of the agreement between the parties, and that, by article 2276

of the Civil Code, parol evidence was not admissible against or beyond what was contained in the act, nor on what may have been said before or at the time of making it or since.

Defendant denied that the evidence offered was to show anything against or beyond the authentic act, but to show a collateral, independent agreement, and to establish that the existence of that collateral agreement was the moving consideration for the obligation not to engage in a competitive business.

There was no mention whatever in the act of sale between the plaintiff and Beer & Co. of any future employment by the former of Kokosky. To find any such promise, we have to leave the act of sale, and ascertain the fact from testimony entirely dehors that instrument. Defendant urges that in this instance no consideration other than the contract of employment was received by him for the stipulation that he would not engage in a competitive business. All of the cash received was, to the knowledge of the plaintiff, received by Henry a` ` Charles Beer, who had advanced the capital of S. T. Beer, and the balance of the consideration was the assumption of the debts of the selling firm, including therein a debt of the plaintiff. That, so far as he was concerned, the only consideration for his said stipulation which he received was the contract with plaintiff that he should be employed as the manager of plaintiff's New Orleans branch, at a salary and with an interest in the profits, until the accumulation of his share from the same should amount to a sum which was to be fixed. That, to accumulate this sum, a time of employment longer than the prohibited term was required. That in the act of sale the prohibiting clause was placed as the last clause of the contract, after the description of what passed by the sale and the consideration. All of the articles except the good will were valued, and no consideration

was mentioned as passing for the obligation not to engage in business. It was therefore an incident to the contract, rather than a part of the consideration. That, if this view was correct, the consideration of the obligation sought to be enforced could be shown by parol and written evidence, and, if evidence established that the consideration had failed, the defendant would be released from the effect of the agreement. That, plaintiff having breached its contract to employ the defendant for the time covered by the contract not to engage in business, he had the right to be discharged from his contract not to engage in competitive business, which was entered into only because of the contract of employment. Civ. Code, arts. 1897, 1899, 1900, 2046, 2047.

That it might be urged that the rescission of the contract could not be demanded, because it was impossible to put the parties in the same position as before the sale, but the parties would be practically in the same position. The stipulation was one personal to the defendant. As to him individually, the contract was that he would not engage in business if the plaintiff would retain him in its employment. An annulment of that contract would put the parties in the same position as before. Plaintiff would not be obliged towards defendant to employ him, and defendant would not be obliged to plaintiff not to engage in a competitive business. As to the sale by Beer & Co., it is not affected by the personal stipulation of the parties not to engage in business. The articles covered by the sale, together with the good will of the firm of Beer & Co., were received by the purchaser, who paid the price stipulated. The amount paid was not in excess in money value of the things received, and the apparent difference between the amount of the liabilities and the assets was more than overpaid by the increase in the business in the first two months after the sale. The true consideration of a written act, where the

consideration is not expressed, may be shown by parol. That in this case the object of the evidence was not to establish the nonexistence of a consideration for his stipulation, but to show the true source or origin of his obligation, not as a means of defeating the legal force and effect resulting from the stipulation, but to establish therefrom the subsequent extinction of his obligation by reason of the subsequent violation by the plaintiff itself of its own correlative obligation which it had assumed, which violation was the basis of his own.

Defendant calls our attention specially to a letter of date October 7, 1903, written by Mr. Brandt, who had negotiated on behalf of the plaintiff the business transaction between them, to the following effect:

"When the whole matter is consummated you will start in as manager of the Eugene Dietzgen Co., of New Orleans, on the following basis: $100 salary per month and 28% of the net profits of New Orleans, which will be gradually increased until you and the man who will be appointed your assistant will have 48% of the net profits. * * * As you are going to make your future with us it will be best for you to look out for your interest as well as ours right from the start. To pay Henry Beer $5,000 and Charles Beer $2,000 is a fair proposition although the business is as far as the finances is concerned, in a shaky condition and would undoubtedly be forced to suspend if H. Beer and Charles Beer would withdraw their support. However to pay Chas. Beer per % amounting to something like $2,500 outside of the above figures and possibly something for the good will and undivided profits is out of the question."

Defendant particularly calls our attention to the following question which he propounded to Mr. Brandt as a witness:

"Q. Do you sit there and swear that Mr. Kokosky would ever have signed that paper transferring his interest, and tying himself up from earning a living with anybody in this territory, unless he had an agreement with you that he was to be employed by your house under a fixed salary, and with an interest in the profits of that business?"

And to Brandt's answer to the same, which was,

"I don't think he would."

Defendant's contention that the only consideration which he had for signing the act of sale was this contemplated employment is not borne out by the record. It is true, he brought only his skill and services into the firm, but at the time this sale took place its business was by no means prosperous, and he had become personally responsible as a partner for its debts. His relations with his partner at that time were disagreeable and strained, and he desired to put an end to them; and it was he himself, not the plaintiff, who brought about the sale. The plaintiff did, after the sale, employ the defendant, as both parties had evidently, in view and expectation of the proposed sale, contemplated should be done. This employment, whatever were its terms, was one bringing about direct personal relations, which the employer could not be forced to continue, but could put an end to when they became unpleasant to him, subject, of course, to the rights of the other party to the contract arising from the discharge. Assuming that the discharge was not justified—assuming, as contended for by defendant, that one of the effects of an improper discharge would be to liberate him from his obligation of not engaging in competitive business—we do not think that defendant had the legal right to determine for himself that the discharge was in fact illegal and improper, and, on the strength of his own individual conclusion on that subject, enter at once into a competitive business, regardless of his stipulation to the contrary. The plaintiff contends that he was properly and legally discharged, and that, until it should have been legally determined otherwise, the defendant should carry out the stipulation. We do not understand defendant to contend that, if he was legally discharged, he was absolved from his obligation not to enter into competitive business.

We think plaintiff had the legal right to enjoin the defendant from carrying on busi-

ness in violation of his agreement and promise, and that the question as to whether the defendant was properly or improperly discharged, and, if improperly discharged, what the effect of that fact would be upon the question as to whether defendant would thereby be released from his obligation not to engage in competitive business, are not issues relevant to this case as presently before us. The district court has reserved to the defendant all rights which he may have which would legally follow from an illegal discharge, and in that reservation we concur.

For the reasons herein assigned, the judgment appealed from is hereby affirmed.

MONROE, J. I concur in the decree.