The defendants, J.S., James A. and Jesse J. Sikes, by written contract, leased to the plaintiff, John F. Belvin, a tract of land fronting on Sikes Lake in Section Two (2), Township Twenty-Two (22) North, Range Ten (10) West in Webster Parish, for a period of ten years, dating from September 10, 1938, at the rental price of One Hundred ($100) Dollars per year. One-half of the rent was payable on March 1st and one-half on September 1st of each year. The lease agreement contains several special stipulations. The following stipulation therein forms the primary basis of the present suit, to-wit: "Parties of the first part agree and bind themselves to protect the party of the second part against any competition in mercantile, cafe, of service station business, fishing camps, and rental cabins, on any lands now owned by them during the life of this lease."
J.S. Sikes was designated by his co-lessors as the person to receive rent payments.
In April, 1939, one of the defendants, Joe Sikes, established a fishing camp on land owned jointly by himself and the other defendants on said lake, approximately three hundred (300) yards from the camp plaintiff had established on the leased land, and in connection therewith launched and maintained several small boats for rent to persons desiring to angle. He advertised for business through signs posted near the situs and allowed other persons to moor their boats at his camp site and to use them at will for fishing. This action was in direct violation of the above quoted stipulation in the lease. *Page 66 
On August 24, 1939, plaintiff instituted the present suit against all three lessors, charging them with having breached the covenants of the lease agreement to his financial injury and prayed for judgment for damages to the extent of Two Hundred ($200) Dollars. He alleged that the contract of lease was in full force and effect through compliance on his part with all of the terms and conditions thereof. By supplemental petition, plaintiff prayed for the issuance of a writ of injunction, after trial of the case, restraining and prohibiting defendants from continuing the breach of the contract in the respects mentioned.
Defendants denied the essential allegations of the petition and amended petition, except the execution of the lease agreement which they admitted; but further alleged that the lease was no longer in force and effect for nonpayment of the Fifty ($50) Dollars rent installment due on September 1, 1939. They prayed that plaintiff's demand be rejected and that the contract of lease be decreed null and void.
After joinder of issue, plaintiff presented a motion to the court in which he briefly set up the issues in the case, supplemented by allegations that under the terms of the lease there would be due on March 1, 1940, a rent payment of Fifty ($50) Dollars, covering the period from March 1, 1940, to September 1, 1940, in the event the contract was held to be valid; that to protect his rights under the lease contract he desired to deposit with the Clerk of Court said Fifty ($50) Dollars "for the use and benefit of defendants, and that upon making said deposit he be relieved from the obligation to make further tender or offer to the defendants". The court issued an order as prayed for and the money was accordingly deposited.
There was judgment below for plaintiff decreeing the lease agreement to be in full force and effect and defendants were enjoined: "* * * from engaging in the business of renting boats, selling bait, giving free picnic grounds, renting cabins, operating mercantile businesses or cafes on any lands owned by defendants or permitting any other person as their agent or licensee so to do."
The Fifty ($50) Dollars deposited were ordered paid over to the defendants. The demand for damages was rejected. Defendants prosecute appeal from this judgment.
Plaintiff has not answered the appeal, therefore, the judgment may not be revised or altered in any respect wherein favorable to defendants.
Plaintiff and his wife, after appeal was lodged here, were killed by one of the defendants. They both died intestate. They left as their sole heirs and legal representatives three children, to-wit: Gladys Belvin Carr, Kate B. Belvin Campbell and Jennie Lou Belvin Nesbit, all of whom accepted the successions of their parents unconditionally. They were recognized as such heirs and legal representatives and sent into possession of all of the property of decedents by the District Court of Webster Parish, Louisiana. On their petition therefor, they were substituted as parties plaintiff and appellees in this court.
Defendants have moved to remand the case to the lower court for the reason, as alleged, that the only issue presented, to-wit: the right to injunctive relief, is now moot because the contract of lease has lapsed, and is now of no effect, on account of nonpayment of rent due thereunder on September 1, 1940, and March 1, 1941. The motion is supported by affidavits of the Clerk of Court and defendants' attorney. The prayer of the motion is that the case "be remanded to the lower court for trial of this motion and to determine if the lease in question is still in force and effect at the present time; and that no action be taken thereon in this court until such a termination is had in the lower court." Appellees oppose the granting of the motion.
As no answer to the appeal has been filed, the correctness of the rejection of the demand in damages is not before us. Whether the lease was in effect when the case was submitted below and, if so, the right to injunctive relief, are questions propounded by the appeal. While we do not doubt the correctness of the allegations of fact contained in the motion to remand, yet we do not think the situation reflected therefrom warrants remanding the case to the end that the pleadings might be amended in consonance with the alleged facts and trial thereon had. These facts transpired since the case was tried below and the appeal lodged here.
If the lease has ceased to exist for the reason assigned or for any other reason, proof of such fact or facts in a proper proceeding in the lower court, of course, would warrant the setting aside of the injunction. *Page 67 
The basic foundation of the injunction is the lease contract. If the foundation is destroyed, all that which depends for its existence thereupon collapses. It is our opinion that the motion to remand is not well founded and it is, therefore, overruled.
On February 28, 1939, Belvin paid to J.S. Sikes on rent account Fifty ($50) Dollars. Through mutual error the receipt for the payment read "in full payment for lease up to October 1, 1939". This payment was intended to, and in fact did, discharge the rent only to September 1, 1939. On October 2nd, Belvin tendered to J.S. Sikes an additional Fifty ($50) Dollars which would have paid the rent until March 1, 1940, if accepted. The tender was refused and simultaneous therewith Sikes informed Belvin through his wife that the lease was at an end for nonpayment of the rent, and that plaintiff would be expected to vacate the leased premises at once. This happened subsequent to filing of this suit but before defendants answered.
We are quite clear in the opinion that the tender on October 2nd of the rent due on September 1st prevented the lapsing of the lease and had the effect of continuing its life for the period the tendered payment was intended to cover. Both parties were under the erroneous impression that this payment was not really due until October 1st, hence the error in the receipt. Belvin, in good faith, relied upon the receipt. Anyway, no demand to pay the rent or to vacate the property was made during the month of September, and, but for the hard feelings created by the violation of the lease agreement, it is likely no exception would have been registered to the belated tender.
The lease does not state where the semi-annual rental payments should be made. Belvin lived on the leased premises. Concerning the place of payment to discharge an obligation, Art. 2157 of the Civil Code reads:
"The payment must be made in the place specified in the agreement. If the place be not thus specified, the payment, in case of a certain and determinate substance, must be made in the place where was, at the time of the agreement, the thing which is the object of it.
"These two cases excepted, the payment must be made at the dwelling of the debtor."
It was not the duty of Belvin, under the admitted facts, to contact J.S. Sikes and tender the rent to him. It was Sikes' duty when he desired payment of the rent to call upon Belvin therefor; and his failure to do so, on the date designated, should not and did not prejudice Belvin's rights as lessee.
The court in Saxton v. Para Rubber Company of Louisiana,166 La. 308 et seq., 117 So. 235, 236, construing Art. 2157 of the Civil Code in connection with a lease of real estate wherein it was not provided how nor where the rent should be paid, said:
"* * * The defendant, therefore, would have been well within his rights if he had waited for the plaintiff to call for the rent at the leased premises.
"* * * There is no doubt, as a legal proposition, that the payment of the rent in accordance with the terms of the lease is one of the essential obligations of the lessee, and the failure of the lessee to properly discharge this obligation is a legal cause for dissolving the lease.
"It is also the rule that, where the lease is silent as to where the rent shall be paid, the payment is to be made either at the lease premises or at the domicile of the debtor, and this presupposes, of course, that the lessor is to call for his rent. * * *"
To the same effect is Hemsing v. Wiener-Loeb Grocery Company,157 La. 189, 102 So. 303.
In Edwards v. Standard Oil Company of Louisiana, 175 La. 720,144 So. 430, 431, the Saxton and Hemsing cases are referred to approvingly; and the court therein reaffirmed a principle firmly inbedded in our jurisprudence when it said: "Hence, although `it is true that ordinarily a lessor may dissolve a lease for failure on the part of the lessee to pay the rent promptly when due, (nevertheless) the right to dissolve a lease is subject to judicial control according to circumstances.'"
It is obvious that without the stipulation in the lease guaranteeing Belvin against competition in the character of business he intended to and did in fact institute upon the leased land, he would not have entered into the contract. That provision was the essence of the agreement. The lessors not only obligated themselves to abstain from such competition, but, in legal effect, also bound themselves not to allow others to do so on any land *Page 68 
they owned on the lake. Relying upon the binding effect of said stipulation, Belvin expended considerable money to equip the land with improvements suitable to accommodate the character of patronage he hoped to and did receive thereafter. In these circumstances the equitable injunctive relief was available to him. He could not adequately protect his rights save by resort to this character of relief. To allow the competition to continue meant the destruction of his own business. Eugene Dietzgen Company v. Kokosky, 113 La. 449, 37 So. 24, 66 L.R.A. 503; Moorman Givens v. Parkerson, 127 La. 835, 54 So. 47; M. Vonderbank v. J. Schmidt, 44 La.Ann. 264, 10 So. 616, 15 L.R.A. 462, 32 Am. St.Rep. 336; May v. Johnson, et al., 13 La.App. 521, 128 So. 540.
For the reasons herein given, the judgment appealed from is affirmed with costs.
DREW, J., recused.