No. 3731

Second Circuit

MAY v. JOHNSON ET AL.

(June 2, 1930. Opinion and Decree.)

J. W. Elder, of Ruston, attorney for plaintiff, appellant.

H. W. Ayres, of Jonesboro, attorney for defendants, appellees.

ODOM, J. These defendants did a general garage business in the village of Chatam for three or four years, and on March 30, 1926, sold the business and all the property connected therewith to the plaintiff, May. The property conveyed consisted of a lot of ground, a garage building, shop, tools, parts, spare parts, and their stock of merchandise then on hand in said garage building. The consideration for the sale was $4,750, evidenced by notarial act of transfer.

On the same day, but at a later hour, they executed, in notarial form, the following instrument, to-wit:

"State of Louisiana, Parish of Jackson:
"Before me the undersigned legal authority personally appeared W. T. and D. S. Johnson, who declared that each of them in consideration of having sold their garage business to W. B. May, agrees and promises not to engage in the garage business in the Village of Chatam, without the written consent of the said W. B. May or his legal representative."

In the month of July, 1928, the defendants were working in another garage in the village of Chatam, and plaintiff brought the present suit to restrain and prohibit them from "operating or working in a garage in the Village of Chatam, Louisiana, in violation of their contract."

Defendants set up as defenses that the contract which they signed was void as being against public policy, that it was executed without consideration, and, pleading generally, they denied that they had violated their agreement by engaging in the garage business, but were working as mechanics in a garage operated by another. A trial of the case on its merits resulted in a judgment rejecting plaintiff's demands, and he appealed.

## OPINION

The agreement which plaintiff contends was violated by defendants is quoted above and speaks for itself. Defendants bound and obligated themselves not to again engage in the garage business in the village of Chatam.

We find no merit in the contention that this contract was void as against public policy. Defendants did not pretend to bind themselves not to again engage in the garage business anywhere, but only that they would not again enter that business in a certain village, Chatam. They could have, under the contract, set up another garage at once at any place other than that village. The jurisprudence is clear on this point. In the case of Moorman & Givens vs. Parkerson, reported in 127 La. 835, 54 So. 47, the court said:

"The law will not permit a man to bind himself by contract not to pursue at any time or at any place the calling whereby he earns his livelihood, because, being so bound, he may become a charge upon the community. But contracts whereby men bind themselves never thereafter to pursue a particular calling, within certain, reasonable, geographical limits, or not to pursue such calling at all within a limited and reasonable time, are generally upheld. Oregon Steam Nav. Co. vs. Winsor, 87 U. S. (20 Wall.) 64, 22 L. Ed. 315; Fleckenstein Bros. Co. v. Fleckenstein, 76 N. J. Law, 613, 71 A. 265, 24 L. R. A. (N. S.) 913; 9 Cyc. pp. 525, 527."

Nor do we find any merit in the contention that the contract was without consideration. The consideration was the advantage received by defendants from the sale of their property to plaintiff. But, under the facts disclosed, we find that defendants violated neither the letter nor the spirit of the contract here sought to be enforced. They were automobile mechanics by trade, and some three or four years previous to the date of this contract, entered into the garage business and presumably plied their trade as mechanics in connection with it. But the "garage business" which they owned and operated and which they sold to plaintiff was an establishment where cars were repaired and, in addition, where "parts, spare parts and merchandise" were kept for sale and sold. The layout which they owned and sold consisted, according to the deed, of a lot of ground with its improvements and appurtenances described as a "garage building, shop, tools, parts and spare parts and stock of merchandise now on hand in said building and on said premises." It is recited in the deed that the vendors (defendants here) were indebted to an oil corporation and to a hardware concern which debts were assumed by the purchaser. Defendants had a business establishment of their own, and were conducting what is generally understood to be a "garage business"; that is, a business not only of repairing cars, but of keeping and selling automobile accessories, oil, and gasoline. It was this business, together with the real and personal property used in connection with it, which was sold. The testimony shows that at the time of the sale this was the only business of the kind conducted in the village of Chatam, and that it was the purpose and desire of plaintiff to acquire that business and continue it, which he did. The business was a financial success as long as there was no other garage business in the village, but, when another garage was set up, plaintiff's business fell off.

These defendants did not agree or bind themselves not to again pursue their vocation of automobile mechanics in Chatam, nor did they agree to refuse employment in a competing or rival business, nor did

they sell to plaintiff their good will. They could have done so legally, we think, under proper restrictions, but the facts are that they did nothing of the kind. That is manifestly shown, not only by the contract itself, but by the testimony. Under the letter of the contract, they bound themselves not to engage in the garage business. They carried out that contract. When this suit was filed, a year and a half after the contract was entered into, they were working in another garage in the village of Chatam, for another man, as mechanics, at a daily wage of $5. They owned no interest in the business, did not share in its profits; all they got was compensation for their work. True, they were the chief workmen, decided what work was to be done on each vehicle brought in for repairs, how the work was to be done, and fixed the price to be charged the owners. Now it is contended that under these circumstances defendants were engaged in the "garage business," as that term was used and understood by the parties to the contract. We do not think so. Defendants testified that they did not intend to deprive themselves of the privilege of pursuing their vocation, or calling, of automobile mechanics as a means of livelihood, as that was the only trade they knew. That plaintiff did not think they did so or intended to do so is evidenced by the fact that, when he purchased the garage business from defendants, he immediately employed them as mechanics in the garage and kept them employed for about eight months. When they left plaintiff's employ, they worked as mechanics for Mr. Garner, who sold Chevrolet cars but who had no repairs made except on cars of that make. Mr. Womack, a business man of the village, entered into the garage business in Chatam, in 1928, and, before doing so, told plaintiff of his intention and told him that he expected to employ defendants as mechanics.

Plaintiff made no objection or protest, nor did he object to defendants working as mechanics for Mr. Garner.

Plaintiff made an effort to prove that defendants were financially interested in the Womack garage, where they were working and that, in fact, it was their garage, but he failed, as the testimony shows beyond question that the garage was owned by Mr. Womack and that he employed defendants to work as mechanics therein at $5 a day.

Counsel for plaintiff, in support of his contentions, cited the following decisions: Wintz vs. Vogt, 3 La. Ann. 16; Dietzgen Co. vs. Kokosky, 113 La. 450, 37 So. 24, 66 L. R. A. 503; and Moorman & Givens vs. Parkerson, 127 La. 836, 54 So. 47.

These cases do not support plaintiff's contentions. In the 3 Annual case, it was found that defendant sold a butcher stall in a market, together with his good will, and agreed not to sell or cause to be sold on his account beef meat within the city of New Orleans. The court found that defendant violated the condition of his contract and bond by selling beef in the same market, in the third stall from that which he had sold to plaintiff. Under those facts, there was judgment for plaintiff.

In the 113 Louisiana case, the defendants sold their business and good will to plaintiff, and in the act of sale the individual members of the firm bound themselves not to engage in a competitive business in New Orleans during a certain period, and after the sale one of them entered into a competitive business, and the court sustained the application for injunction.

In the 127 Louisiana case, the defendant sold his interest and good will in an insurance business and agreed not to enter the insurance business in opposition to the

purchasers, but later on entered the insurance business in the same territory in competition with the purchasers.

The judgment appealed from is correct, and is accordingly affirmed, with costs.