188 So.2d 96 (1966)
INGRAM CORPORATION and Ingram Contractors, Inc.
v.
CIRCLE, INCORPORATED and Monroe J. Wolfe.
No. 2190.
Court of Appeal of Louisiana, Fourth Circuit.
June 6, 1966.
Rehearing Denied July 5, 1966.
Thomas B. Lemann, Richard P. Wolfe, Monroe & Lemann, New Orleans, for Ingram *97 Corp. and Ingram Contractors, Inc., plaintiffs and appellees.
Lemle & Kelleher, McCloskey & Dennery, New Orleans, for Circle, Inc., and Monroe J. Wolfe, defendants and appellants.
Before YARRUT, CHASEZ and BARNETTE, JJ.
CHASEZ, Judge.
Plaintiff, Ingram Corporation, brought this injunction proceeding against defendants, Circle, Incorporated, and Monroe J. Wolfe, seeking to prohibit defendants from "suffering or permitting the use" of a certain barge "in the business of dredging, general contracting, or oilfield or pipeline construction and installation * * *" in violation of a covenant not to compete, entered into by these parties in connection with a sale of assets of the defendant corporation to the plaintiff corporation.
The agreement, entered into on April 27, 1964, in part provides as follows:
"Circle and Wolfe agree and guarantee that neither they nor any corporation in which either of them has, directly or indirectly, any substantial ownership, will compete, or participate in any way in such competition, with the Ingram interests in the business of dredging, general contracting, or oilfield or pipeline construction and installation, for a period of four years from the closing date. This paragraph shall not be interpreted to prevent Circle or Wolfe from engaging in the equipment rental business, provided that such equipment is not used in competition with the Ingram interests."
Circle and Wolfe subsequently purchased Barge Number OE 101, refurbished it and made its availability for rent known to the industry by February or March, 1965. In due course the barge was rented to J. Ray Mc Dermott, Inc., a prime competitor of Ingram Corporation, with no limit as to time or use of same. The barge was used by J. Ray Mc Dermott, Inc. on two pipeline jobs (Gulf & Placid) that Ingram Corporation had bid on in competition with J. Ray Mc Dermott, Inc.
The trial court awarded judgment in favor of plaintiff, enjoining defendants from engaging in activities in violation of the quoted agreement.
Defendants appeal, contending (1) that the covenant is invalid and unenforceable because it is in restraint of trade and contrary to public policy; (2) that it is so vague and indefinite as to be incapable of enforcement; and (3) even if valid, that there has been no breach or violation of same in fact.
Covenants not to compete are invalid in Louisiana, defendant contends, unless ancillary to an agreement to sell good will. It is true that in the instant case the agreement makes no mention of "good will," but we are cited to no authority and know of none to support defendant's assertion that in the absence of such sacramental words the agreement not to compete is unenforceable as being purely in restraint of trade and thus contrary to public policy.
Inasmuch as the instant agreement was to purchase all of the assets of Circle, Incorporated, which consisted of certain specialized machinery used in a particular phase of business, offshore marine construction, it was in effect the sale of the business itself and we think, if it be necessary to so find, that such a sale necessarily included any "good will".
In any case, such agreements have frequently been upheld by our courts when they are reasonable as to time, scope and geographical area, without any consideration of "good will".
In May v. Johnson, et al., 13 La.App. 521, 128 So. 540, a covenant not to compete was held valid as to public policy even though it was specifically found and held *98 that the "good will" of the business had not been sold.
It does not appear to us that the restriction in the present case can be characterized as other than "reasonable". It is limited in time to four years; it is limited in scope to "the business of dredging, general contracting, or oilfield or pipeline construction and installation * * *"; it is limited geographically to that area of Louisiana and offshore in which Ingram Corporation operates.
We do not attribute great seriousness to point No. 2, that the covenant is so vague and indefinite as to be incapable of enforcement. This attack is levelled at the second sentence of the quoted paragraph, and turns on the phrase therein, "competition with the Ingram interests." It is argued that "Ingram interests" is so non-specific and so broad that for all practical purposes it is impossible for defendants to determine in advance whether or not rental of equipment to any lessee would violate the covenant. Defendant-appellant concedes that the first sentence in this paragraph is sufficiently specific to be enforceable. It appears clear to us that the second sentence is merely interpretative of the first, and has the effect of making an exception. We are further in agreement with plaintiff's counsel's argument that this point is irrelevant because if Ingram Corporation should operate in a field other than "dredging, general contracting or oilfield or pipeline construction and installation", then the covenant does not apply at all.
Defendants' third contention, that they have not actually violated the covenant, is based upon the fact that the lease was entered into after bids had been submitted to and contracts had been awarded by Gulf Oil Company and Placid Oil Company, the two particular instances of competition pointed to by plaintiff. It is argued that competition between Ingram Corporation and J. Ray Mc Dermott, Inc. had ceased, as to these jobs when the awards were made. It is further argued that to hold competition had not ceased would prohibit the defendants from renting any equipment to any corporation engaged competitively with the interests of Ingram Corporation, as defined in the agreement. In this area of marine construction, competition between Ingram Corporation and J. Ray Mc Dermott, Inc. is a continuing matter. Defendant-appellant refers to Webster's definition of competition as:
"* * * the act of seeking or endeavoring to gain what another is endeavoring to gain at the same time; common strife for the same object; strife for superiority * * *" etc.
Webster further defines competition in its commercial and economic sense as:
"The effort of two or more parties, acting independently, to secure the custom of a third party by the offer of the most favorable terms; also the relations between different buyers or different sellers which result from this effort."
We believe that it is clear from the language of the agreement that it prohibits the use of any rental equipment leased by Circle, Incorporated and/or Monroe J. Wolfe, in competition with the interests of the Ingram Corporation "in the business of dredging, general contracting, or oilfield or pipeline construction and installation," and that as the agreement is subject to reasonable limitations, it should be enforced.
For the foregoing reasons the judgment of the trial court issuing a permanent injunction in favor of plaintiffs, Ingram Corporation and Ingram Contractors, Inc., and against the defendants, Circle, Incorporated and Monroe J. Wolfe, permanently enjoining and restraining said defendants, their officers, agents and employees and any persons acting under their direction and control or in concert with them, from suffering or permitting the use of the Barge *99 OE 101, other than as a Quarter Barge, in the business of dredging, general contracting or oilfield or pipeline construction and installation, prior to April 27, 1968, is affirmed. Defendants shall pay the costs in both Courts.
Affirmed.