550 So.2d 673 (1989)
JON BET & ASSOCIATES, d/b/a Snelling & Snelling, Plaintiff-Appellant,
v.
Sally M. TYER, a/k/a Sally M. Glasscock, Defendant-Appellee.
No. 20628-CA.
Court of Appeal of Louisiana, Second Circuit.
August 23, 1989.
*674 Cady & Thompson by Tom N. Thompson, Shreveport, for plaintiff-appellant.
Blanchard, Walker, O'Quin & Roberts by James W. Wyche, Shreveport, for defendant-appellee.
Before MARVIN, FRED W. JONES, Jr. and HIGHTOWER, JJ.
MARVIN, Judge.
In this action on an employment contract, we affirm a judgment rejecting the demands of the plaintiff employment agency for liquidated damages against Ms. Tyer that arose when she resigned her employment as a personnel consultant with the agency and accepted an offer made only to her to become placement director of a business college that from time to time had been a client of the agency.

THE AGENCY'S CONTENTIONS
The agency contends that Ms. Tyer, for about three years as its employee, had exclusively serviced and filled all requests made to the agency by the college for teachers, administrators, and other personnel, and that the college's offer, even though made directly and personally to Ms. Tyer to employ her as its placement director, should be construed as a request to, or hire of, the agency to procure one or more applicants for the position. In any event, the agency says, Ms. Tyer's acceptance of the offer activated or triggered this obligation in Ms. Tyer's employment contract with the agency:
In the event employee is offered and accepts a position with ... either a new Client Company or Client Company that Employer has done business with previously, within 90 ... days after leaving Employer; Employee agrees to pay Employer the applicable service charge due Employer ...[1]
The agency contends that the obligation to pay the service charge is in the nature of an obligation to pay liquidated damages which is enforceable at law or that the service charge was an "asset" of which Ms. Tyer deprived the agency. In the event that the "service charge" obligation is not enforced, the agency alternatively contends *675 it should recover actual damages because Ms. Tyer either misappropriated the "asset" or has unjustly enriched herself.
The factual issues (What did the college seek either from Ms. Tyer or from the agency? What expense for training Ms. Tyer did the agency incur and recoup?) were impliedly, and, in our opinion, correctly, resolved in Ms. Tyer's favor. We also conclude that the legal issue (whether the contractual obligation sued on is an unreasonable, overreaching, and, therefore, unenforceable restraint of trade) was correctly resolved by the trial court under the circumstances of this record.

OTHER FACTS
When the offer was made to Ms. Tyer, the college was dissatisfied with the performance of its placement director, but the position was not then vacant. The college did not seek applicants for the position. In those instances when the college had sought the agency's services through Ms. Tyer, she would cause the agency to advertise for and procure "applicants" for various jobs from which the college could select and offer to hire. In this instance, however, the college sought directly, and only, Ms. Tyer for its placement director and discharged its placement director only after Ms. Tyer accepted the position.
The owner of the agency readily agreed that Ms. Shultz, who made the offer to Ms. Tyer for the college, "had her eyes set on" Ms. Tyer months or years before Ms. Tyer accepted the 1986 offer. Ms. Tyer declined earlier offers by the college for reasons not revealed in this record.

THE EMPLOYMENT CONTRACT AND THE LAW
The printed employment contract should be read with the addendum quoted above. The contract contains provisions which effectively state: Either party may terminate the relationship without notice. The employee forfeits all bonuses and incentives. The employee will not disclose confidential and valuable information about the agency's business, methods of operations, or its customers. The employee shall not compete with the agency within 30 miles of any agency office for 18 months. Any breach of the agreement not to compete shall obligate the employee to pay liquidated damages of two-thirds of the net income of the employee or of a competitor whom the employee assists. See LRS 23:921.
The employment contract provision not to compete and the addendum provision imposing the service charge when an employee terminates employment to work for an old or new client company are separately stated in the contract. The agency seeks damages only under the service-charge provision and not under the non-competition provision. The service-charge provision, akin to an agreement not to compete, tends to interfere with the employee's privilege of working or earning a livelihood, and must be strictly construed in the employee's favor. See Thomas v. McCrery, 147 So.2d 467 (La.App. 2d Cir. 1962), and Orkin Exterminating Company v. Foti, 302 So.2d 593 (La.1974).
An employment agency may charge and collect a placement fee if, through the agency's efforts, a position with a client company is filled by one of the agency's applicants. The agency is statutorily prohibited from collecting a fee from an applicant except for preparation of job resumes and for "[e]mployment procured through the [agency's] efforts ..." LRS 23:111 B(1).
If an agency refers an applicant for a particular position to a client and the applicant is not then hired, but later obtains another position with that client independently of the agency's efforts, the agency may not collect a fee from the applicant. See Automated Per. Int. of New Orleans, Inc. v. Thomas, 293 So.2d 669 (La.App. 4th Cir.1974), and Madrid v. Lawson, 446 So.2d 837 (La.App. 2d Cir. 1984).
The agency's owner testified that each of its employee-consultants who receives a placement request, or job order, from a client company has a duty to prepare and circulate to the other employee-consultants a description of the job, the salary range *676 and the qualifications an applicant must meet. If the position is filled through the effort of any of the agency's consultants, the agency is entitled to its "fee."
The agency's owner further explained that in the situation where one of its consultants does not inform its other consultants about an available job opening, but instead accepts the available job for himself or herself, the agency's sole "protection" is to enforce the service-charge agreement and collect from the consultant the placement fee that the agency would have earned had its efforts resulted in the position being filled by an applicant procured by the agency.
We shall accept the agency owner's explanation and assume, arguendo, that in the situation hypothesized by the owner, the enforcement of the service charge agreement could perhaps be held as a reasonable and enforceable restraint on the consultant. In that situation, the client is not seeking, from the agency, one particular person, but applicants who are qualified for the job from which the client may choose.
Here, however, the situation is not that hypothesized by the agency's owner because the college did not seek, from the agency, applicants for placement director and did not contact Ms. Tyer in her capacity as a personnel consultant with the agency. Notwithstanding that the college had used the services of the agency in the past, the college was not obligated to use the agency to fill every vacant position that might have arisen at the college. The college was not precluded from independently seeking a particular person for a particular job. We shall not speculate whether the college would have sought the agency's services if Ms. Tyer had not accepted the college's offer.
Similarly, we must conclude that the service-charge addendum to the employment contract did not prohibit Ms. Tyer from accepting a job offer made independently to her by any employer, whether or not that employer had used the agency's services in the past.
Under the circumstances of this record, we must conclude that the college and Ms. Tyer contracted independently of any effort of the agency.
We cannot find that Ms. Tyer had a duty to inform the agency or its other consultants of a job offer made solely and directly to her. The enforcement of the service charge agreement under these circumstances would unreasonably restrict the employee's privilege of changing employment. The trial court correctly denied liquidated damages under the contract. See and compare Orkin Exterminating Company v. Foti, and Automated Per. Int. of New Orleans, Inc. v. Thomas, cited above.

ALTERNATIVE DEMANDS
Alternatively, the agency sought damages for misappropriation of an agency asset or for unjust enrichment, contending the information that the college was seeking a new placement director was an "asset" of the agency, and that the agency was impoverished by Ms. Tyer's acceptance of the job because it "lost the opportunity to place [an applicant] in that position."
The information that the college was seeking a new placement director was communicated only to Ms. Tyer personally as the desired employee, and not in her capacity as an employment agency consultant who was being asked to locate qualified applicants. We cannot construe the college's offer to Ms. Tyer to be an "asset" of the agency.
Because the college did not seek the agency's services to procure applicants for the position of personnel director, the agency did not have, and did not lose, the opportunity to earn a fee by placing an applicant in the position. The agency was not impoverished without justification or cause. See Kirkpatrick v. Young, 456 So.2d 622 (La. 1984).

DECREE
At appellant's cost, the judgment is AFFIRMED.
NOTES
[1] This provision is a printed "ADDENDUM" to the agency's EMPLOYMENT CONTRACT. The agency requires each employee to sign the contract and the addendum. The litigants do not dispute that the "applicable service charge" would be $5,760, which is 24 percent of Ms. Tyer's first year salary ($24,000) at the college.