608 So.2d 222 (1992)
DAIQUIRI'S III ON BOURBON, LTD. d/b/a Daiquiris
v.
Charles C. WANDFLUH and Daiquiri Delights Shop, Inc.
No. 92-CA-446.
Court of Appeal of Louisiana, Fifth Circuit.
October 27, 1992.
Writ Denied January 8, 1993.
Clement F. Perschall, Jr., Metairie, for plaintiff-appellant Daiquiri's III on Bourbon, Ltd., d/b/a Daiquiris.
J. Forrest Hinton, T. Christopher Seay, McGlinchey, Stafford, Cellini, & Lang, P.C., New Orleans, for defendants-appellees Charles C. Wandfluh and Daiquiri Delights Shop, Inc.
Before KLIEBERT, C.J., and DUFRESNE and WICKER, JJ.
KLIEBERT, Chief Judge.
This matter is before us on an appeal taken by the plaintiff from a judgment of the trial court which sustained an exception of no cause of action filed by defendants.
The petition against the defendants, Charles C. Wandfluh and Daiquiri Delight Shop, Inc., is one for damages and an injunction restraining the latter from operating a business the same as or similar to that of the petitioner within the Parish of *223 Orleans for a period of two years from June 13, 1991.
Specifically, it is alleged in its suit that: (1) petitioner is engaged in a business at 633 Bourbon Street in the City of New Orleans, which consists primarily of the sale of frozen alcoholic daiquiris and frozen non-alcoholic daiquiris, (2) the defendant Wandfluh was in petitioner's employ from August 1990 until June 1991, (3) that in connection with his employment Wandfluh signed an agreement containing a covenant not to compete, and (4) Wandfluh's association with Daiquiris Delight Shop, Inc. is in violation of the agreement, signed by Wandfluh, by virtue of the operation of a place of business at 300 Bourbon Street in the City of New Orleans. The agreement was attached to and made a part of the petition.
The sole issue presented by the appeal is the correctness of the trial judge's ruling that the covenant-not-to-compete agreement was unenforceable because it did not meet the requirements of LSA-R.S. 23:921(C) in that it contained no territorial limitation and contained an overly broad definition of the employer's business.
The agreement upon which the action is based reads in its entirety as follows:

"AGREEMENT
THIS AGREEMENT, MADE BETWEEN CHARLES WANDFLUH HEREINAFTER CALLED EMPLOYER AND DAIQUIRIS HEREINAFTER CALLED EMPLOYEE.
THE PARTIES HERETO AGREE THAT EMPLOYEE SHALL PERFORM CERTAIN SERVICES AT THE DIRECTION OF EMPLOYER ON THE BASIS OF $4.00 PER HOUR; THIS AMOUNT SHALL BE PAYABLE WEEKLY OR BIWEEKLY AT THE DISCRETION OF THE EMPLOYER.
ADDITIONALLY, THE PARTIES AGREE THAT EMPLOYEE SHALL REMAIN RESPONSIBLE FOR ANY NEGLIGENCE WHICH PRODUCES DAMAGES TO THE OPERATION OF EMPLOYER'S BUSINESS OR CUSTOMERS OF EMPLOYER.
EMPLOYEE AGREES THAT HE SHALL NOT, DURING ANY PERIOD OF TIME THAT HE PERFORMS SERVICES FOR EMPLOYER OR FOR A PERIOD OF TWO YEARS THEREAFTER DIRECTLY OR INDIRECTLY ENGAGE AT ANY OTHER PLACE OF BUSINESS WHICH IS THE SAME OR SUBSTANTIALLY SIMILAR TO THE BUSINESS COVERED BY THIS AGREEMENT.

FOR PURPOSES OF THIS AGREEMENT THE BUSINESS OF EMPLOYER IS DEEMED TO BE THE SALE OF FROZEN DRINKS FOR CONSUMPTION BY THE GENERAL PUBLIC.
EMPLOYEE SHALL NOT, DURING THE TERM OF THIS AGREEMENT OR FOR A PERIOD OF TWO YEARS THEREAFTER, COMMUNICATE OR DIVULGE TO OR USE FOR THE BENEFIT OF ANY OTHER PERSON, PARTNERSHIP, ASSOCIATION OR CORPORATION ANY INFORMATION OR KNOWLEDGE CONCERNING THE METHODS OF MANUFACTURE, PROMOTION, SALE, OR DISTRIBUTION OR ANY OTHER TRADE SECRET OR PROCESS OF THE BUSINESS OF THE EMPLOYER OR USED OR EMPLOYED BY EMPLOYER IN AND ABOUT ITS BUSINESS WHICH MAY BE COMMUNICATED TO THE EMPLOYEE OR WHICH EMPLOYEE MAY ACQUIRE BY VIRTUE OF HIS PERFORMANCE UNDER THE TERMS OF THIS AGREEMENT.
EMPLOYEE FURTHER AGREES THAT ANY INVENTION, NEW RECIPE, PROCESS, OR ANY OTHER MATTER WHICH HE, EITHER INDIVIDUALLY OR IN CONJUNCTION WITH ANY OTHER EMPLOYEES SHALL INVENT OR PRODUCE DURING THE TERM OF EMPLOYMENT, SHALL REMAIN THE PROPERTY OF EMPLOYER AND EMPLOYEE HEREBY ASSIGNS ALL OF HIS RIGHT, TITLE AND INTEREST IN AND TO ANY INVENTION PROCESS, OR ANY SIMILAR MATTER TO EMPLOYER.

*224 THE USE OF THE MASCULINE SHALL BE READ TO INCLUDE BOTH THE MASCULINE AND THE FEMININE GENDER.
EXECUTED THIS 18 DAY OF AUGUST, 1990."

(Emphasis Supplied)
LSA-R.S. 23:921 provides in pertinent part as follows:
"A. Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void. (Emphasis Supplied)
* * * * * *
C. Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment."
In Comet Industries, Inc. v. Lawrence, 600 So.2d 85 (2nd Cir.1992) and Comet Industries, Inc. v. Colvin, 600 So.2d 89 (2nd Cir.1992), companion cases with facts remarkably similar to the matter at hand, the employer sought injunctions against its former employees on the basis of covenantnot-to-compete agreements which provided as follows:
"Employee agrees that during the term of this Agreement and for a period of two (2) years thereafter, Employee shall not, anywhere within the continental United States, directly or indirectly, individually or in concert with others, or through the medium of a corporation, partnership, association, joint venture or otherwise, whether as an employee, owner, partner, representative, consultant or in any other capacity, engage in any business or represent any other company or business which supplies products or services which are similar to or are competitive with those provided at any time during the term of this Agreement by Employer."
Comet v. Colvin, supra, at page 89.
Applying the strict requirements of LSA-R.S. 23:921, the Louisiana Second Circuit Court of appeal held that "[c]learly, the instant non-competition provision is not enforceable as written because it fails to specify the `parish or parishes, municipality or municipalities, or parts thereof' wherein Comet carried on its business." "[A] contract seeking to fit into an exception to this rule must strictly comply with the requirements contained in the statute." Id. (emphasis added). Unlike the agreement in the Lawrence case, the non-competition agreement at issue herein fails even to limit the scope of its restraint of trade to the continental United States. The agreement contains no territorial limitation whatsoever. Accordingly, the covenant-not-tocompete agreement at issue fails to conform to the requirements of LSA-R.S. 23:921(C) and is, therefore, null and void because it is not limited to a "specified parish or parishes, municipality or municipalities, or parts thereof."
Moreover, we believe the trial judge was correct in concluding the covenant-not-to-compete agreement involved here is in contravention of LSA-R.S. 23:921(C) in that it contains an overly broad definition of the employer's business.
Public policy requires that covenant-notto-compete agreements "must be strictly construed in the employee's favor." Jon Bet & Associates v. Tyer, 550 So.2d 673, 675 (2nd Cir.1989); Comet Indus., Inc. v. Lawrence, supra, (courts should not reform otherwise unenforceable covenant-not-to-compete agreements). To comply with Louisiana law, a covenant-not-to compete agreement must specifically define the employer's business. Ingram Corp. v. Circle, Inc., 188 So.2d 96, 98 (4th Cir.), writ refused, 249 La. 712, 190 So.2d 232 (1966). The covenant-not-to-compete agreement at issue herein precludes appellee Wandfluh *225 from selling "frozen drinks for consumption by the general public." Contrary to the requirements of LSA-R.S. 23:921(C) and the holding of Ingram Corp., supra, the overly broad language of the covenantnot-to-compete agreement at issue fails to define the employer's business with specificity. Indeed, if appellant had its way, appellee Wandfluh would be precluded from employment at countless different businesses, stores, and stands which sell all forms of "frozen drinks." Based on this reasoning, the trial court properly found that the "terminology in the contract could prevent [appellee Wandfluh] from entering into any business that sells any type of frozen drinks which could include[:] yogurt, ice cream, malts or any number of products not sold by [appellant]." (Reasons for Judgment, pages 99-100).
The covenant-not-to-compete agreement at issue herein is null and void, as a matter of law, for the additional reason that it contains an overly broad definition of the employer's business.
For the reasons assigned the judgment appealed from is affirmed. Appellant to bear all costs.
AFFIRMED.