618 So.2d 533 (1993)
WATER PROCESSING TECHNOLOGIES, INC. D/B/A Clean Water Utilities
v.
David B. RIDGEWAY.
No. 93-CA-0264.
Court of Appeal of Louisiana, Fourth Circuit.
April 28, 1993.
*534 Ronald J. Savoie, Metairie, for appellee.
Charles D. Marshall, Jr., Robert T. Lorio, Milling, Benson, Woodward, Hillyer, Pierson & Miller, for appellant.
Before CIACCIO, WARD and LANDRIEU, JJ.
LANDRIEU, Judge.
In this expedited appeal, we are asked to review the trial court's issuance of a preliminary injunction, restraining behavior alleged to violate the non-competition provision of a distributorship agreement. Concluding that the non-competition agreement is invalid, we reverse the judgment of the trial court.

FACTS:
On August 15, 1992, Water Processing Technologies/Clean Water Utilities (hereinafter "WPT/CWU"), represented by its president Robert E. Farmer, and Clean Water Utilities of New Orleans (hereinafter "CWUNO"), represented by its president David B. Ridgeway, entered into a Distributorship Agreement.[1] According to the Agreement, CWUNO was named as the exclusive agent to market and lease the processing and conditioning units manufactured by WPT/CWU in the geographical marketing area of Orleans, Jefferson, and St. Tammany Parishes for a term of twenty years.
Among the provisions of the Agreement was the right of termination for cause, with thirty days written notice. However, should the distributorship be terminated, the form agreement included a non-competition clause at Paragraph No. 7. It provides in pertinent part:

Non-Competition. Distributor agrees that or [sic] a period of two (2) years after the termination of this Agreement, Distributor will not knowingly, directly or indirectly, manage, operate, jointly control, lend money to, endorse the obligations of or participate in or be connected with any business (other than ____ or an affiliate thereof) engaged to any extent in a business similar to that of CWU (i.e. water purification) in competition with CWU in the State(s) of ____, and that for such two (2) year period, Distributor will not, in any manner solicit customer of CWU, directly or indirectly, compete with CWU or its assigns engaged in the water purification business, directly or indirectly, within such area. Distributor acknowledges that the remedy at law for any breach of this provision amy [sic] be inadequate and that CWU or its assignees shall be entitled to injunctive relief should Distributor breach this provision, in addition to other remedies....
Although the form Agreement contained a blank to insert the geographical limits of the non-competition clause, those limits were not specified.
By letter of October 13, 1992, Ridgeway provided official notice that the "distributorship agreement between Cleanwater Utilities, Inc. and Cleanwater Utilities of New Orleans, Inc." was terminated "per our discussions." He later attested that no sales were ever made and that no money ever changed hands between the parties under the agreement. Shortly after its termination, Ridgeway obtained employment as a factory representative of Hydrodynamics Corporation of Bogalusa, Louisiana, a manufacturer and seller of water conditioners, but not water purification products, comparable to those sold by WPT/CWU.
Relying on the non-competition provision of the Distributorship Agreement, Water Processing Technologies, Inc., d/b/a Clean Water Utilities filed a Petition for Injunctive Relief against Ridgeway in the Civil District Court for the Parish of Orleans. A temporary restraining order was issued to enjoin Ridgeway from continuing his employment *535 with Hydrodynamics Corporation, and, after a hearing on plaintiff's application, a preliminary injunction was issued on November 25, 1992. The trial court concluded that the Distributorship Agreement created an agency relationship between the parties and that the Non-Competition paragraph of the Agreement "comes under the realm of Revised Statute 23:921(C)," an exception to the rule against such clauses. A devolutive appeal of the judgment ordering the preliminary injunction was granted on December 3, 1992.

DISCUSSION:
La.Rev.Stat.Ann. § 23:921A (West Supp.1993) provides that, with limited exceptions, every agreement to restrain anyone from exercising a lawful profession, trade, or business of any kind shall be null and void. Exceptions to this statement of public policy include the following:
B. Any person ... who sells the goodwill of a business may agree with the buyer that the seller will refrain from carrying on or engaging in a business similar to the business being sold or from soliciting customers of the business being sold within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the buyer, or any person deriving title to the goodwill from him, carries on a like business therein, not to exceed a period of two years from the date of the sale.
C. Any person ... who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment.
D. Upon or in anticipation of a dissolution of the partnership, the partnership and the individual partners ... may agree that none of the partners will carry on a similar business within the same parish or parishes, or municipality or municipalities, or within specified parts thereof, where the partnership business has been transacted, not to exceed a period of two years from termination of employment.
E. Parties to a franchise may agree that:
(a) ...
(b) The franchisee shall:
(i) During the term of the franchise, refrain from competing with the franchisor or other franchisees of the franchisor or engaging in any other business similar to that which is the subject of the franchise.
(ii) For a period not to exceed two years following severance of the franchise relationship, refrain from engaging in any other business similar to that which is the subject of the franchise and from competing with or soliciting the customers of the franchisor or other franchisees of the franchisor.

. . . . .
F. (1) An employee may at any time enter into an agreement with his employer that, for a period not to exceed two years from the date of the termination of employment, he will refrain from engaging in any work or activity to design, write, modify, or implement any computer program that directly competes with any confidential computer program owned, licensed, or marketed by the employer, and to which the employee had direct access during the term of his employment or services.
. . . . .
The failure to perform this "obligation not to do" may entitle the obligee to recover damages, and a court may order injunctive relief to enforce the terms of the agreement without the necessity of proving irreparable injury. § 23:921G.
A contract or agreement which prohibits an employee from competing with a former employer consistently has been found to be against public policy in Louisiana. Neeb-Kearney and Co., Inc. v. Rellstab, 593 So.2d 741, 747 (La.App. 4th Cir.), writ denied 594 So.2d 1321 (La.1992). *536 The reason for this public policy is "the basic right of an individual to better himself in our free society." Id. at 748. The legislative enactment of the policy in 1934 as § 23:921 was modified first in 1962 to allow enforcement of limited non-competition agreements for those employers incurring an expense in the training of the employee or in advertising the employee's association with the business. In 1989, this single exception was replaced, as detailed above, to permit non-competition agreements between the buyer and seller of the goodwill of a business, between an employer and employee regarding the solicitation of customers, among the partners of a partnership on its dissolution, between the parties to a franchise, and between an employer and an employee with access to a confidential computer program prohibiting any activity with a competing computer program. In each statutory scheme, however, any exception to the prohibition against non-competition agreements has been specifically restricted in time and, generally, geographical area.
Cases which have interpreted the current law have held that "[p]ublic policy requires that covenant-not-to-compete agreements `must be strictly construed in the employee's favor.'" Daiquiri's III On Bourbon, Ltd. v. Wandfluh, 608 So.2d 222, 224 (La. App. 5th Cir.1992), writ denied 610 So.2d 801 (La.1993) (quoting Jon Bet & Associates v. Tyer, 550 So.2d 673, 675 (La.App. 2d Cir.1989)). Accordingly, a non-competition agreement which contained no territorial limitation whatever was found to be null and void pursuant to the requirements of § 23:921 C. Id. Likewise, an agreement which purported to prohibit the employee from competing against the employer "anywhere within the continental United States" was found to be unenforceable as written since it failed to specify the "parish or parishes, municipality or municipalities, or parts thereof" wherein the employer carried on like business, as required by § 23:921 C. Comet Industries, Inc. v. Lawrence, 600 So.2d 85, 87 (La.App. 2d Cir.), writ denied 604 So.2d 1002 (La.1992).
In this case, the trial court concluded that the statutory exception to the prohibition against non-competition agreements found at § 23:921 C, the contract between the employer and the agent to refrain from soliciting customers of the former employer, was applicable. Although we agree with the trial court and the plaintiff/appellee that the parties could have agreed to a non-competition clause under the terms of this exception, the non-competition provision of the agreement is void unless it strictly complies with the requirements of the statute.
The relevant statute requires that a valid clause limit competition only in a business similar to that of the employer and in soliciting the employer's customers. Furthermore, that limitation may occur only in a restricted geographical area, "a specified parish or parishes, municipality or municipalities, or parts thereof," and only "so long as the employer carries on a like business therein," but, in no event, "to exceed a period of two years from termination of employment."
We find that the non-competition clause included in the Distributorship Agreement fails to comply with the exception to the general prohibition described in § 23:921C. Although the exception requires that the territorial limits for non-competition be specified, the clause in this agreement does not do so. While limits may be inferred from the limits of the Distributorship Agreement itself, we decline to reform the non-competition clause in favor of the employer.
Accordingly, the district court's judgment of November 25, 1992 is reversed. The preliminary injunction is dissolved and the defendant, David B. Ridgeway, is no longer enjoined from pursuing employment opportunities proscribed by the invalid non-competition clause of the Distributorship Agreement.
REVERSED.
NOTES
[1] An Amendment To Distributorship Agreement, entered into on the same date, was made between Water Processing Technologies, Inc. and David B. Ridgeway, d/b/a Clean Water Utilities of New Orleans, Inc. In oral argument, it was stipulated that CWUNO was never actually incorporated and that Ridgeway executed the Agreement and Amendment in his individual capacity.