691 So.2d 1384 (1997)
SUMMIT INSTITUTE FOR PULMONARY MEDICINE AND REHABILITATION, INC., Plaintiff,
v.
Scott W. PROUTY, Applicant/Defendant.
No. 29829-CW.
Court of Appeal of Louisiana, Second Circuit.
April 9, 1997.
Rehearing Denied May 1, 1997.
*1385 Lance Paul Havener, Shreveport, for Applicant/Defendant.
Comegys, Lawrence, Jones, Odom & Spruiell by Franklin H. Spruiell, Jr., Shreveport, for Plaintiff.
Before WILLIAMS, GASKINS and CARAWAY, JJ.
CARAWAY, Judge.
This appeal involves the interpretation of the 1989 amendment, and subsequent amendments, to Louisiana's non-competition statute, La.R.S. 23:921 (hereinafter the "Statute"),[1] as applied to a 1994 employment contract between plaintiff and its former employee. Because we find the contract overly broad in its restraint on the re-employment of defendant, we reverse the trial court's issuance of a preliminary injunction and remand for further proceedings.

Facts and Procedural History
Summit Institute for Pulmonary Medicine and Rehabilitation, Inc. (hereinafter "Summit") operates long-term, acute care and physical rehabilitation hospitals in Bossier City and West Monroe, Louisiana. In February of 1992, Summit hired Scott Prouty ("Prouty") as a respiratory therapist, and he later accepted a position in Summit's Business Development and Marketing Department. It was Prouty's job to recruit patients for Summit's long-term acute care and rehabilitation programs from other area hospitals in North Louisiana which were not staffed for such services.
In November, 1994, Prouty signed a written contract, entitled Letter of Employment Understanding, which included a post-termination one-year noncompetition clause. The provision provided as follows:
Employee will not at any time while employed by Hospital and for a period of one (1) year following the date notice of termination of Employee's employment with Hospital is given for any reason by Employee or by Hospital with cause, as set forth herein, be or become an officer, director, partner or employee of or consultant to or act in any managerial capacity with or own any equity interest in any entity which manages or provides long term acute medical services and/or physical rehabilitation in Bienville, Bossier, Caddo, Claiborne, DeSoto, Grant, Jackson, Lincoln, Natchitoches, Ouachita, Rapides, Sabine, or Webster Parishes, Louisiana.
On June 10, 1996, Prouty voluntarily terminated his employment with Summit. In January, 1997, Summit learned that Prouty was violating the non-competition agreement by working in the marketing department of Lagniappe Hospital, a competitor of Summit located in Caddo Parish, Louisiana.
Summit filed this action for injunctive relief on January 21, 1997, against Prouty seeking to enforce the non-competition provision of the 1994 employment contract. The trial court, after considering affidavits of witnesses and written briefs by both parties, granted a preliminary injunction on February 10, 1997, recognizing the validity and enforceability of the contract and restraining Prouty from further violation of same.
Prouty thereafter filed an application for a supervisory writ to this court. On February 28, 1997, we entered judgment upholding the trial court's substantive ruling as to the validity *1386 and enforceability of the non-competition clause in the employment contract but ordered that the judgment be vacated because the judgment failed to comply with La.C.C.P. art. 3605. On March 3, 1997, the trial court entered a new judgment which specifically set forth the parameters of the injunction based upon the precise language contained in the non-competition provision.
An application for a supervisory writ was next filed with the Louisiana Supreme Court on March 5, 1997. On March 14, 1997, the court granted Prouty's writ, remanding the case to this court for expedited briefing, argument and opinion.
Prouty's assignments of error assert that Summit's Letter of Employment Understanding is impermissibly broad regarding the prohibition placed upon Prouty's re-employment and regarding the definition of Summit's business. Prouty further asserts that his execution of the Letter of Employment Understanding while employed by Summit was subject to the vice of duress.

Discussion
Is the non-competition provision in Summit's contract impermissibly overbroad under Section C of the Statute?
In making this assignment of error, Prouty argues that the language of the contract would prohibit Prouty from working as an employee in any capacity with any medically-related institution in the defined geographic area regardless of whether such employment directly involved the solicitation of Summit's customers or otherwise affected Summit's ability to compete in the medical services field. Prouty cites the case of Daiquiri's III on Bourbon, Ltd. v. Wandfluh, 608 So.2d 222 (La.App. 5th Cir.1992), writ denied, 610 So.2d 801 (La.1993), in support of its position.
On the other hand, Summit argues that the non-competition agreement at issue in AMCOM of Louisiana, Inc. v. Battson, 28,171 (La.App.2d Cir. 1/5/96), 666 So.2d 1227, reversed, 96-0319 (La. 3/29/96), 670 So.2d 1223, contained a virtually identical provision preventing a former radio employee from "enter[ing] into or engag[ing] directly or indirectly in the performance of any services for any other radio station." The supreme court reversed this court's opinion in AMCOM which had nullified the entire non-competition agreement for its overly broad geographical limits. Although the only issue raised in AMCOM concerned the geographical limits, the supreme court's summary ruling reinstating the trial court's injunction against the former employee gave force to the above-quoted provision. Summit argues that the language in its contract, like the language in AMCOM, comports with the broad language in Section C of the Statute.
A comparison of the applicable language as excerpted from the Summit contract and Section C of the Statute reveals the following:
Summit Contract: Employee will not be or become an employee of any entity which manages or provides long term acute medical services and/or physical rehabilitation.
La.R.S. 23:921.C: Any ... employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer....
Summit argues that the subject contract's prohibition that the "employee will not become an employee of any entity" with a medical business similar to Summit's is authorized within the meaning of the statutory allowance to constrain the employee "from carrying on or engaging in a business similar to that of" Summit. Because the provision regarding the solicitation of customers may be read as preceded by the disjunctive "or," Summit's position is that the employee need not be restrained by the agreement from soliciting customers of his former employer nor even be in an employment position where such solicitation could occur. According to this view of Section C, an employee "engaging in" a competitor's business as an employee in whatever capacity can be restrained by his former employer.
The term "business" as it appears in the 1989 amendment of the Statute is initially used in Section A of the Statute for the purpose of expressing Louisiana's broad prohibition against non-competition agreements. Section A declares null every contract "by which anyone is restrained from exercising a *1387 lawful profession, trade or business of any kind." Considering all three of these terms, "profession, trade or business," the broadest term which would be inclusive of most persons moving from one employment to the next would be the term "business."
In this case, since Mr. Prouty is not working in a profession[2] or trade, it must first be determined that Summit's contract with Prouty imposes a constraint against Prouty's "exercising a lawful ... business." Although Prouty's new employment is not an entrepreneurial venture amounting to being in business for himself, he is in business as the manager of marketing for Lagniappe Hospital. This distinction between being in business for oneself and being employed in business was expressly recognized under the former version of the Statute before its amendment in 1989 wherein the general provision against non-competition agreements read as follows:
No employer shall require or direct any employee to enter into any contract whereby the employee agrees not to engage in any competing business for himself, or as the employee of another, upon the termination of his contract of employment with such employer, and ... (former La.R.S. 23:921 prior to amendment by 1989 Acts, No. 639) (Emphasis supplied.)
Finding no change in the broad policy concern of the former law and the amended Statute, we therefore recognize that the term "business" in Section A of the Statute includes the actions of Mr. Prouty as an employee of Lagniappe Hospital which cannot be constrained unless the exception of Section C was met by his prior agreement with Summit.
In Section C the term "business" is used again. The phrase "carrying on or engaging in a business similar to that of the employer" must, however, be interpreted from the overall context of the language of Section C and from the standpoint that the provision is an exception to the strong and long-standing public policy reflected in the general rule in Section A. Is this phrase limited in its meaning to a person's pursuit of an entrepreneurial venture "for himself" or does it also include a person's working in a business "as the employee of another?"
The two restraints on competition allowed by Section C prevent the former employee from engaging in a similar business "and/or" from soliciting customers of his former employer. In this context, if the restraint against engaging in a similar business broadly includes any business activity which the former employee may undertake as an employee of a competing business, then the second allowed restraint regarding the solicitation of customers is unnecessary, particularly when considered in view of the employer's invariably strong bargaining position visa-vis the employee. Furthermore, the restraint on the former employee's engagement in business is indirectly referenced again in Section C's later statement of the geographical limits which are the parishes or municipalities where "the employer carries on a like business." Emphasis supplied. The "business" which the employer "carries on" is thus likened to the "business" which the employee may be prohibited from "carrying on or engaging in." The employer's business, however, is not the single business activity of one employee, but the whole business enterprise. We therefore interpret the two restraints listed in Section C to allow the employer to prevent a former employee from engaging in a similar business for himself, i.e. an entire business venture, or from being employed in a competitor's business in a position wherein he solicits the customers of his former employer.
Though a broader statutory interpretation of Section C and its "and/or" provisions might be made, the protection which the legislature intended for the employer, which detracts from the broad public policy concern for the employee, should promote a reasonable economic goal. While it may be reasonable to prevent an employee from forming a business for himself competing directly against his former employer in the first two years after the employee's termination, it is not reasonable to prevent him from accepting *1388 employment with an already existing competitor where his new position involves no solicitation of the customers of the former employer.[3] Such interpretation would unreasonably prevent an employee, such as Prouty, from employment in the medical field as a computer programmer, respiratory therapist or a maintenance person even though such positions might have no impact on the former employer's ability to compete with the new employer.
In interpreting the 1989 amendment to the Statute, which eliminated the former statute's requirement on the employer for substantial expenditure in training or in special advertisement for the employee, we find no change in the state's basic public policy as expressed in Orkin Exterminating Company v. Foti, 302 So.2d 593, 596 (La.1974). This policy confirms
"the right of individual freedom and of individuals to better themselves in our free-enterprise society, where liberty of the individual is guaranteed. A strong public policy reason likewise for holding unenforceable an agreement exacted by an employer of an employee not to compete after the latter leaves his employment, is the disparity in bargaining power, under which an employee, fearful of losing his means of livelihood, cannot readily refuse to sign an agreement which, if enforceable, amounts to his contracting away his liberty to earn his livelihood in the field of his experience except by continuing in the employment of his present employer." [quoting National Motor Club of La., Inc. v. Conque, 173 So.2d 238, 241 (La.App. 3d Cir.1965) ].
"These fundamental background principles must be borne in mind in interpreting the intent of the 1962 amendment. This provides only a limited exception to the stringent prohibition of the statute against such non-competition agreements, and to the strong and long-established public policy of this state to such effect."
The 1989 amendment to the Statute likewise provides a limited exception to the rule against non-competition agreements. The language of the non-competition provision in Summit's contract goes beyond the limited exception of Section C of the Statute by preventing Prouty's employment in any capacity with other employers in the medical community. In view of AMCOM, supra, however, we must next consider the appropriate remedy in this case.
Is the Summit contract null and void under the Statute or may it be given partial applicability to enjoin Prouty's marketing activities?
The issue of whether nullification or reformation of an overly broad non-competition agreement was examined in this court's opinion in AMCOM. In that case, the geographical limit for the non-competition agreement specifically listed Caddo and Bossier Parishes as the two parishes where the plaintiff's radio station operated but also included an additional overlapping geographic limit extending from a 75-mile radius of Shreveport and Bossier City. The trial court granted injunctive relief preventing the former employee from employment in the two parish area, but in the process the court refused to apply the 75-mile limit. This court agreed that the 75-mile limit was overly broad and unauthorized by the Statute, but instead of reforming the non-competition agreement and limiting the injunction to the two parish area, the majority viewed the entire agreement as a nullity.
Judge Hightower's dissenting opinion in AMCOM noted that the deletion of the challenged 75-mile limit left the agreement with an appropriate geographical limit under the Statute. With or without the 75-mile limit, the employee could readily discern from the language of the agreement that he was prohibited from employment in Caddo and Bossier parishes. Judge Hightower did not find the 75-mile limit confusing to the employee and distinguished the AMCOM contract as follows:
The present contract is not one, such as those against which the majority inveighs, *1389 purposely drafted by an employer expecting the court system to reform an ambiguous provision into the outer limits of the law.
AMCOM, supra at 666 So.2d at 1231.
The Louisiana Supreme Court granted certiorari in AMCOM and without an opinion, reversed this court's ruling and reinstated the trial court's judgment for injunctive relief.
When AMCOM is considered solely in the context of the geographical limitation controversy, we distinguish easily the sanctioned reformation there, which involved a deletion of the 75-mile limit, from the reformation of Summit's contract necessary in this case. To reform the present contract's unauthorized prohibition against employment in the medical field, we would be required to read into the contract the entirety of the authorized restraint under Section C of the Statute, the restraint from soliciting customers of Summit. Paraphrasing Judge Hightower's statement above, we will not reform an employer's ambiguously broad provision into the outer limits of the law. Just as a court in defining the limits of injunctive relief must express with specificity the acts sought to be restrained to inform the defendant of the extent to which his freedom is curtailed, the employer, in drafting a non-competition agreement, must properly inform the employee of the limits placed upon his future employment. La.C.C.P. art. 3605. While the employee in AMCOM could discern from the contract a geographical limit authorized under the Statute, the Summit contract nowhere states that Prouty must refrain from soliciting customers of his former employer.
Although Summit further asserts that the language in the AMCOM contract also violates the Statute as herein construed, the error raised in that appeal focused only on the disputed geographical limit. Under the appellate court rules, the litigants define the specifications of errors for review. Uniform Rules-Court of Appeal, Rule 2-12.4. Neither this court's nor the supreme court's silence in AMCOM regarding the specific issue now raised in this appeal is persuasive for this initial appellate review of the particular language of Section C of the Statute regarding the restraint on an employee's engagement in business.

Conclusion
Accordingly, we hold that the non-competition contract is a nullity under the Statute, and the trial court's judgment granting the preliminary injunction is reversed. The case is remanded to the trial court for the resolution of any issues regarding the bond posted in connection with the grant of the preliminary injunction.
REVERSED AND REMANDED.

APPLICATION FOR REHEARING
Before HIGHTOWER, WILLIAMS, STEWART, GASKINS and CARAWAY, JJ.
Rehearing denied.
HIGHTOWER, Judge, dissenting from the Denial of Rehearing
This decision permits the defendant, Mr. Prouty, despite his one-year noncompetition agreement, to become the marketing manager at a competing hospital located in the same general area as his former employer.
More importantly, the majority's narrow view of La.R.S. 23:921(C) will likely nullify most efforts (many in existing agreements) by employers to contractually preclude even key administrative employees, including corporate officers and directors, from subsequent employment with competitors.
I respectfully dissent from the denial of the rehearing.
NOTES
[1] LSA-R.S. 23:921 now provides, in pertinent part, as follows:

A. Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void.
* * * * * *
C. Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specific parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment.
[2] Whether Mr. Prouty's training as a respiratory therapist qualifies him as a medical professional has not been argued and is not pertinent to our resolution of this case.
[3] We would also note the additional protection afforded the employer under Louisiana's Uniform Trade Secrets Act, La.R.S. 51:1431, et seq. which may be applied against a former employee.