STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

23-615

MASTER FLOW TECHNOLOGIES, LLC

VERSUS

CHRIS LEE

**********

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. 93,987
HONORABLE LALA B. SYLVESTER, DISTRICT JUDGE

**********

CHARLES G. FITZGERALD
JUDGE

**********

Court composed of Van H. Kyzer, Charles G. Fitzgerald, and Gary J. Ortego, Judges.

REVERSED AND REMANDED;
INJUNCTION DISSOLVED.

**John C. Nickelson**
**Nickelson Law PLLC**
**7591 Fern Avenue, Suite 1403**
**Shreveport, Louisiana 71115**
**Phone: (318) 678-5786**
**Counsel for Defendant/Appellant:**
  **Chris Lee**

**William Daniel Dyess**
**Dyess Law Firm**
**207 Church Street, Suite 106**
**Natchitoches, Louisiana 71457**
**Phone: (318) 352-5880**
**Counsel for Defendant/Appellant:**
  **Chris Lee**

**Sarah K. Casey**
**Baker Donelson Bearman Caldwell & Berkowitz, PC**
**201 St. Charles Avenue, Suite 3600**
**New Orleans, Louisiana 70170**
**Phone: (504) 566-5200**
**Counsel for Intervenor:**
  **Mulholland Energy Services, LLC**

**Brian A. Homza**
**Cook Yancey King & Galloway**
**333 Texas Street, Suite 1700**
**Shreveport, Louisiana 71120**
**Phone: (318) 221-6277**
**Counsel for Plaintiff/Appellee:**
  **Master Flow Technologies, LLC**

**Jared Dunahoe**
**Dunahoe Law Firm**
**1402 Second Street**
**Natchitoches, Louisiana 71458**
**Phone: (318) 352-1999**
**Counsel for Plaintiff/Appellee:**
  **Master Flow Technologies, LLC**

**FITZGERALD, Judge.**

In this appeal, we are called upon to review a preliminary injunction related to an employment agreement.

## SUMMARY OF FACTS AND PROCEDURAL HISTORY

From 2019 to 2023, Chris Lee worked as a sales representative for Master Flow Technologies LLC ("MFT"). Chris left MFT after accepting the position of sales manager with Mulholland Energy Services ("Mulholland").

Shortly thereafter, MFT filed a petition for temporary restraining order, preliminary injunction, and permanent injunction, seeking to prohibit Chris from competing against MFT and from disclosing confidential information. The lawsuit also included a claim under the Louisiana Uniform Trade Secrets Act. MFT based its lawsuit on noncompetition and confidentiality provisions included in Chris's employment agreement.

On June 8, 2023, following a contradictory hearing, the trial court issued a preliminary injunction that prohibits Chris from competing with MFT in various parishes in Louisiana and counties in Texas and from disclosing or using MFT's proprietary or confidential information. This appeal arises from that preliminary injunction.

On appeal, Chris asserts that the trial court erred in issuing the preliminary injunction for two reasons: first, the noncompetition provision and the subsequent judgment fail to define the prohibited activities with specificity. And second, the judgment enjoins him from disclosing trade secrets or confidential information without specifying the protected information. Chris also asserts that MFT failed to prove the existence of any trade secret or confidential information.

# LAW AND ANALYSIS

The preliminary injunction specifically enjoins Chris from the following:

1.  Competing with MFT through the provision of services which are the same or similar to MFT's Business, and from providing marketing services for any company which offers services which are the same or similar to MFT's Business and Services in the Parishes of Natchitoches, Red River, Sabine, Desoto, Bossier, Webster, Winn, Caddo, and Bienville in the State of Louisiana and the Counties of Nacagdoches, Angelina, San Augustine, Shelby, and Sabine in the State of Texas as provided for in the November 6, 2019 Employment Agreement;

2.  Disclosing, using or putting into practice MFT's Proprietary Information, trade secrets, process or information; and

3.  Disclosing, using or putting into practice any information that MFT has designated in writing as being confidential.

A preliminary injunction is an interlocutory procedural device that preserves the status quo between the parties until a trial on the merits. *Novelarie Techs., LLC v. Harrison,* 08-157 (La.App. 5 Cir. 8/19/08), 994 So.2d 57. Preliminary injunctions are designed to prevent future acts which may cause irreparable injury, loss, or damage to the applicant. Although interlocutory, a party aggrieved by either the granting or denial of a preliminary injunction may file an appeal. La.Code Civ.P. art. 3612.

Generally, a trial court is allowed wide discretion in determining whether an injunction is warranted, and the decision will not be disturbed on appeal absent an abuse of discretion. *Yorsch v. Morel*, 16-662 (La.App. 5 Cir. 7/27/17), 223 So.3d 1274, *writ denied*, 17-1475 (La. 11/13/17), 230 So.3d 207.

**First Issue for Review**

Chris first asserts that the trial court erred in entering the preliminary injunction because both the noncompetition provision and the subsequent judgment fail to define the prohibited activities with specificity. In our view, the underlying

2

issue is a question of law: the validity of the noncompetition provision in the employment agreement. Thus, we review this issue de novo.

Louisiana disfavors noncompetition agreements, deeming them contrary to public policy except in limited circumstances specified by statute. *Paradigm Health Sys., LLC v. Faust*, 16-1276 (La.App. 1 Cir. 4/12/17), 218 So.3d 1068. That public policy is expressed in La.R.S. 23:921:

> A. (1) Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void. However, every contract or agreement, or provision thereof, which meets the exceptions as provided in this Section, shall be enforceable.
>
> . . . .
>
> C. Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, on a like business therein, not to exceed a period of two years from termination of employment. . . .
>
> D. For the purposes of Subsections B, C, E, F, J, K, and L of this Section, a person who becomes employed by a competing business, regardless of whether or not that person is an owner or equity interest holder of that competing business, may be deemed to be carrying on or engaging in a business similar to that of the party having a contractual right to prevent that person from competing.

To be valid, the agreement must strictly comply with the requirements of La.R.S. 23:921. *Water Processing Tech. v. Ridgeway,* 618 So.2d 533 (La.App. 4 Cir. 1993). The statute itself demands strict construction by declaring that any agreement not in compliance with the exceptions "shall be null and void." La.R.S. 23:921(A)(1). As we discern no ambiguity in this statute, we must apply it as written. La.Civ.Code art. 9. Further, noncompetition agreements are strictly construed in favor of the employee and against the party attempting enforcement. *LaFourche Speech and Language Serv., Inc. v. Juckett*, 94-1809

3

(La.App. 1 Cir. 3/3/95), 652 So.2d 679, *writ denied*, 95-0850 (La. 5/12/95), 654 So.2d 351.

In *Daiquiri's III on Bourbon, Ltd. v. Wandfluh*, 608 So.2d 222 (La.App. 5 Cir.), *writ denied*, 610 So.2d 801 (La.1993), the fifth circuit concluded that La.R.S. 23:921(C) requires noncompetition agreements to specifically define the employer's business. In that case, because the agreement lacked specificity and broadly precluded the employee from engaging in countless different businesses by prohibiting him from "selling frozen drinks for consumption by the general public," the court ruled that the agreement was unenforceable. This decision was based on Louisiana's policy disfavoring noncompetition agreements and the general rule construing them strictly in the employee's favor.

*LaFourche*, 652 So.2d 679, followed *Daiquiri's III* reasoning and held that noncompetition agreements must specifically define the employer's business to be valid.

Likewise, in *Brand Energy Solutions, LLC v. Gilly*, 16-1025 (W.D. La. 1/18/2017), 2017 WL 238917 (unpublished opinion), the court considered an agreement that restricted an employee from carrying on or engaging in business similar to that of the company. The agreement attempted to define the employer's business by listing numerous activities and services. The employer argued that the law allows it to restrict an employee from conducting business which is similar to that of the employer, regardless of whether the employee performed work related to all of the employer's business activities. The court disagreed, finding that the agreement was overly broad. The court specifically concluded that, to be valid, a noncompetition agreement "must identify with reasonable certainty those areas which the employer lawfully may prohibit competition." *Id.* at *6.

4

With strict interpretation and this guidance in mind, we turn our attention to the noncompetition agreement before us. On November 10, 2019, MFT and Chris (referred to as "CL" in the subject agreement) entered into an employment agreement which contains the following pertinent language:

> WHEREAS, CL employment shall provide all services relating to production facilities, completion operations, and MFT desires the CL Services to assist it in furthering the success of its various business operations and is employing CL to carry on and successfully promote Master Flow Technologies, LLC in its business, specifically including, but not limited to Hydraulic Torque Wrenches, Hydrostatic Test Units, Rig Wash/Steam Wash, Cooler/Heat Exchanger Maintenance, Casing Cut Saw, High Pressure Greasing, Stack Lift Winches, 10k-15K Pump Trucks, Gap Vac Trucks, Roustabout Services, Facility Repairs, Environmental/Disposal, Rental Item LED Light Plants, Rental Item Trash Pumps 2"-6", Pipeline Pig & Test, (the "MFT Services");
>
> . . . .
>
> 3. NON CIRCUMVENTION/NO COMPETITION. . . . CL hereby agrees that it will not compete with MFT through the provision of services which are the same or similar to MFT's Business, Master Flow nor shall it provide marketing services for any company which offers services which are the same or similar to MFT's Business and Services for a period of two (2) years following the termination of this Agreement. The area of services provided by MFT are the Parishes of Natchitoches, Red River, Sabine, Desoto, Bossier, Webster, Winn, Caddo and Bienville in the State of Louisiana and the Counties of Nacogdoches, Angelina, San Augustine, Shelby and Sabine in the State of Texas.

A plain reading of the agreement reveals two fundamental flaws: first, the agreement is ambiguous. And second, the noncompetition language is overly broad.

To begin, the agreement prohibits Chris from competing with MFT through the provision of services which are the "same or similar" to MFT's business. It then prohibits Chris from providing marketing services to companies offering "services which are the same or similar to MFT's business and services." However, section 3 of the agreement, the noncompetition provision, fails to define MFT's business or MFT's business and services.

5

To find any information about MFT's business and services, we must turn back to the opening paragraph of the agreement, which is a job description with a laundry list of services purportedly within the employment purview of Chris and the business of MFT. The description tasks Chris with carrying on and promoting MFT "in its business" which includes "Hydraulic Torque Wrenches, Hydrostatic Test Units, Rig Wash/Steam Wash, Cooler/Heat Exchanger Maintenance, Casing Cut Saw, High Pressure Greasing, Stack Lift Winches, 10k-15K Pump Trucks, Gap Vac Trucks, Roustabout Services, Facility Repairs, Environmental/Disposal, Rental Item LED Light Plants, Rental Item Trash Pumps 2"-6", Pipeline Pig & Test[.]"

The list is ambiguous in its language; it is also completely open-ended by stating that it "is not limited to" those items. The noncompetition provision fails to define MFT's business or the service areas in which Chris may be lawfully prohibited with any certainty, much less reasonable certainty.

The agreement is also overly broad. The opening paragraph of the agreement tasks Chris with providing "all services relating to production facilities" and "completion operations," as well as carrying on and promoting MFT's numerous "business operations," including the open-ended litany of oilfield related activities quoted above. And although the noncompetition provision attempts to prohibit Chris from working in any of those areas or providing marketing services to anyone who works in those areas, the record clearly establishes that Chris's position with MFT was simply as a sales representative.

The noncompetition provision goes beyond the plain language of La.R.S. 23:921(C), and enforcement of the agreement would prohibit Chris, a sales representative, from not only competing with MFT in similar sales jobs but from working in essentially any position or with any company in the oil and gas industry.

6

As written, the noncompetition agreement would prohibit Chris from providing any services, or from marketing any services, for any oil and gas related business.

As determined in *Paradigm Health,* 218 So.3d 1068, merely stating that an employee may not engage in the same or similar business as the employer is insufficient. And like *Paradigm Health*, we reject enforcement of a noncompetition agreement that restricts an employee from engaging in services that he never performed with his former employer.

We further conclude that the noncompetition provision in this case cannot be reformed. Although courts have the opportunity in some instances to strike overly broad references without invalidating the entire agreement, such is not the case here. The agreement before us would require a complete rewrite, not simply a minor edit. We have no authority to rewrite an ambiguous and overly broad noncompetition agreement into compliance with La.R.S. 23:921.

For the above reasons, the noncompetition agreement between Chris and MFT is invalid. As a result, the preliminary injunction is null and void in this respect. After all, a party seeking an injunction has the burden of proving its right to the relief sought. In considering the request, the court must determine the validity and enforceability of the agreement. As succinctly stated in *Advanced Med. Rehab., LLC v. Manton,* 21-315, p. 8 (La.App. 5 Cir. 2/2/3/22), 362 So.3d 703, 711:

> Where the actions the employer seeks to enjoin pursuant to a non-competition agreement do not fall within the exception found in La. R.S. 23:921(C), or where the agreement is found to be unenforceable for failure to conform to La. R.S. 23:921, the employer seeking enforcement is unable to carry its burden of establishing that it is entitled to the relief sought.

**Second Issue for Review**

Here, Chris asserts that the preliminary injunction is improper in that it enjoins him from disclosing trade secrets or confidential information without specifying the

protected information. He further asserts that MFT failed to prove the existence of a trade secret or confidential information.

In relevant part, the employment agreement states:

2. PROPRIETARY INFORMATION; NON-DISCLOSURE; AND CONFIDENTIALITY

2.1. By reason of their relationship, MFT may provide CL with certain valuable and confidential proprietary information regarding financial and other information (the "Proprietary Information"), including the names of Customers, which information is proprietary to MFT and which CL shall keep strictly confidential. CL may not disclose the Proprietary Information to any person outside of its company, or use or exploit it for any purpose whatsoever without the express, written permission of MFT. In addition, CL hereby agrees to bind any and all people or companies it may deal with together with the company's officers, directors, employees, agents, representatives, consultants, contractors, and other persons to whom the Proprietary Information may be disclosed with permission to the same strict confidentiality obligation set forth herein.

2.2. CL agrees to hold any information which has been designated in writing as confidential by MFT in the strictest confidence and shall not disclose such information to any third party without MFT's permission.

"Whether or not something constitutes a trade secret is a question of fact. We review the factual findings of the trial court under the manifest error/clearly wrong standard of review." *Marine Pile Drivers, L.L.C. v. Welco, Inc,* 43,498, p. 3 (La.App. 2 Cir. 8/13/08), 988 So.2d 878, 880 (citations omitted).

Very simply, the trial court manifestly erred in finding that MFT proved the existence of a trade secret or proprietary information.[1] In *American Biocarbon, LLC v. Keating*, 20-2059, p. 4 (M.D. La. 12/10/20), 2020 WL 7264459, at *4 (unpublished opinion) (quoting *Navigation Holdings, LLC v. Molavi*, 445 F.Supp.3d 69, 75 (N.D. Cal. 3/27/20)), the court explained:

"[T]o allege a trade secret, the plaintiff must 'describe the subject matter of the trade secret with sufficient particularity to separate it from

---

[1] The preliminary injunction is also fatally flawed in that it lacks specificity in this respect. "An order granting either a preliminary or final injunction or a temporary restraining order shall describe in reasonable detail . . . the act or acts sought to be restrained." La.Code Civ.P. art 3605.

8

matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies.'"

The burden of proving the existence and identification of a trade secret lies with the plaintiff. *Ring St., LLC v. Cypress Connects, LLC*, 23-1486 (E.D. La. 7/27/23), ___ Fed.Supp.3d ___ (2023 WL 4825194).[2] Simply declaring one's procedures or processes a trade secret without articulating the specifics fails to invoke trade secret protection. *Praeses, LLC v. Bell*, 54,601 (La.App. 2 Cir. 6/29/22), 343 So.3d 933. In *Praeses*, the plaintiff failed to identify the precise methods, procedures, and formulas it claimed to be proprietary or subject to being proprietary.

As defined by La.R.S. 51:1431(4):

4) "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

(a) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and

(b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

In addition to trade secrets, the preliminary injunction here prohibits Chris from disclosing or using proprietary information. Section 2.1 of the agreement defines "proprietary information" as "certain valuable and confidential proprietary information regarding financial and other information (the 'Proprietary Information'), including the names of Customers, which information is proprietary to MFT and which CL shall keep strictly confidential."

In its petition, MFT alleged that Chris breached the agreement by sharing confidential information. According to MFT, Chris implemented a proprietary rig-

_____

[2] In this case, the federal district court recognized that the treatment of trade secrets under the federal Defend Trade Secrets Act and the Louisiana Uniform Trade Secrets Act is nearly identical.

washing process at Mulholland, and he also disclosed confidential pricing and customer information.

At the hearing on the preliminary injunction, MFT owner, Waylon White, testified that his company has a proprietary rig-washing procedure which he described as "unique" and "way more efficient" than other procedures. When asked to identify the specific confidential aspects of the procedure, he pointed to MFT's method and special soap. Yet Mr. White admitted that Chris had some knowledge of the procedure from his prior employment with a different company contracted by MFT. The lack of secrecy is also evidenced by the following testimony of Mr. White:

> A.      It's very unique. The way we, we clean our tank system. Like I explained earlier, we're, we're way more efficient, the way we do it. It is proprietary to us. Nobody else knows about it. The way the guys, the way that we tie to the tanks, we don't tie in from the top, we tie in to the bottom to make it quick, more efficient.
>
> Q.      Nobody else does that?
>
> A.      Not to my knowledge, no. That's because we can clean tanks in half the time anybody else can.
>
> Q.      Alright and nobody's around when you're doing your work, right, watching you do it?
>
> A.      Rig people around that are walking around.
>
> Q.      There's people all over the place.
>
> A.      Yeah, they don't pay attention.
>
>      . . . .
>
> Q.      There are other people working on the rig that aren't at MFT.
>
> A.      Yeah, but they're, they're doing their job.

The rig-washing procedure that MFT claims is secret and proprietary is performed in front of third parties and in plain view. There is simply no evidence of any effort by MFT to keep this process confidential.

10

And although Mr. White testified that Chris learned about the formulation of the specialized soap after he became employed with MFT, Mr. White did not accuse Chris of misappropriating this information. What is more, Mr. White testified that MFT has a patent pending for the soap formula, meaning that the formula cannot be defined as confidential.

Before going further, we note that Chris is free to use the experience and knowledge that he has gained throughout his work career in his new position. "A former employee who enters business in competition with his former employer necessarily utilizes the experience he acquired and the skills he developed while in his former employment." *Nat'l Oil Service of La., Inc. v. Brown*, 381 So.2d 1269, 1273 (La.App. 4 Cir. 1980).

MFT next argues that Chris disclosed trade secret information by revealing pricing information. However, MFT admitted that Chris was only in possession of MFT's historic pricing; he had no information about the current-day pricing practices of the company. MFT also admitted that its pricing is fluid and disclosed to its customers. Undoubtedly, those customers use this information in negotiations with other outside parties. This is not secret information. A "special pricing list may be a trade secret if efforts are made to maintain its secrecy." *Pontchartrain Medical Labs, Inc. v. Roche Biomedical Laboratories, Inc.*, 95–2260, p. 6 (La.App. 1 Cir. 6/28/96), 677 So.2d 1086, 1090.

MFT also failed to carry its burden of proving the confidentiality of its customer list. There is no evidence that MFT made any effort to keep its list secret or that the information was not readily ascertainable. "A customer list . . . may be a trade secret if efforts are made to maintain its secrecy." *Id*. Simply declaring that the information is secret or proprietary is insufficient. As explained in *Praeses*, 343

So.3d at 942, "a confidentiality agreement cannot transform information that is generally known into a trade secret."

Finally, MFT admitted that Chris did not take any confidential records or written information with him when he left for Mulholland. His knowledge of the pricing information and customer list, for example, came solely from memory. In *Gulf Toy House, Inc. v. Bertrand*, 306 So.2d 361 (La.App 3 Cir. 1975), this court held that preventing an employee working from memory from soliciting customers of a former employer would have the effect of preventing that employee from working in the geographic area. Hence, such a prohibition would be a roundabout way of enforcing an otherwise unenforceable confidentiality agreement.

In the end, the trial court manifestly erred in finding the existence of legally protectable trade secrets and proprietary information. And as a result, the trial court abused its discretion in issuing the preliminary injunction in this respect.

## DISPOSITION

The judgment of the trial court is reversed, and the preliminary injunction is dissolved in its entirety. This matter is remanded to the trial court for further proceedings. And all costs of this appeal are assessed to Master Flow Technologies LLC.

**REVERSED AND REMANDED;**
**INJUNCTION DISSOLVED.**